RICHARD LEBEL, PLAINTIFF–RESPONDENT, v. EVERGLADES MARINA, INC., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 20, 1988—Decided May 31, 1988.

Before Judges KING, GRUCCIO and D'ANNUNZIO.

*Ozzard, Wharton, Rizzolo, Klein, Mauro, Savo & Hogan,* for appellant (*Arthur D. Fialk,* on the letter brief).

*Gittleman, Muhlstock & Meyers,* for respondent (*Steven Muhlstock,* on the letter brief).

The opinion of the court was delivered by

KING, P.J.A.D.

We granted leave to appeal the decision of a Law Division judge finding *in personam* jurisdiction over a Florida corporation being sued by a citizen of New Jersey in our courts. *R.*

2:2–4.  We find that insufficient minimum contacts existed between the defendant corporation and this State and that the defendant did not purposefully avail itself of New Jersey as a place to do business or intentionally put its product in the stream of commerce in this State.  In fairness to the defendant and in the interest of allocative efficiency, this forum will not assert *in personam* jurisdiction in this case.  We reverse.

In 1984, Richard Lebel, a New Jersey resident, attended a boat show in New York City where he met a representative of defendant Everglades Marina, Inc., (Everglades) a Florida corporation, and discussed the purchase of a "Cigarette Speed–Boat" for about $200,000.  Lebel asserts that he spoke on the telephone from New Jersey with a representative of Everglades in Florida at least 20 times between 1984 and 1986.  He said that he discussed the purchase of the boat and his intention to use it in New Jersey during the summer months.  The representative from Everglades denied meeting Lebel in New York City and contended that all discussions about the boat occurred in 1986 by long-distance phone calls.

Lebel finally purchased a 1987 Cigarette Speed–Boat for $215,580 from the Everglades headquarters in Fort Lauderdale, Florida.  The sales agreement, dated June 24, 1986, was sent to Lebel in New Jersey which he signed and returned to Florida.  The boat was delivered, registered, and stored in Florida.  Sometime after the purchase Lebel arranged for a third-party hauler to bring the boat to New Jersey.[1]  The hauler was involved in an accident while in transit to New Jersey (we do not know where) and the boat was damaged.  The boat never even reached New Jersey and was then returned to Florida, where Lebel later sold it to a third party.

On September 11, 1987 a complaint was filed in New Jersey against Everglades by Lebel alleging fraud, negligent repairs,

---

[1]The record does not disclose information regarding the length of time that the boat was in Florida before it was shipped to New Jersey.

breach of the warranty of merchantability, and improper storage and maintainance. The defendant was served in Florida by the sheriff's department. *R.* 4:4–4(a)(1). Everglades filed a motion to dismiss for lack of personal jurisdiction. As noted, the Law Division judge denied the motion. He decided that there were sufficient minimum contacts between the defendant and this forum to exercise *in personam* jurisdiction. On February 22, 1988 we granted defendant's motion for leave to appeal and now reverse.

■ A long line of cases address the right of a state to reach out and hale a citizen of another state or nation into its jurisdiction in an action for damages. The decision on whether to exercise jurisdiction focuses upon two factors: (1) whether "minimum contacts" have occurred between the defendant and the forum state and (2) whether the contacts themselves are sufficient under the specific circumstances of the case for the defendant reasonably to expect to be forced to litigate in the forum state.

■ Due process requires that in order for the defendant to be subject to *in personam* jurisdiction it have certain minimum contacts with a state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 *U.S.* 310, 316, 66 *S.Ct.* 154, 158, 90 *L.Ed.* 95 (1945). Plaintiff here urges that the defendant had contacts with this State because: (1) defendant's representative spoke with plaintiff about the boat on a number of occasions by long-distance telephone from Florida; (2) defendant knew plaintiff would bring the boat to New Jersey at some time; (3) defendant sent the contract to New Jersey to be signed; (4) the first contact was at a boat show in New York. However, the fact remains that the boat never reached New Jersey. It was delivered and registered in Florida, stored there, and maintained there. It was in transit to New Jersey when the third-party hauler was in an accident and the boat was damaged.

In similar cases where other New Jersey courts have found *in personam* jurisdiction the merchandise had been delivered to New Jersey through a stream of commerce flowing into this State. The court exercised *in personam* jurisdiction over a Maryland corporation which sold a truck to a New Jersey resident in *Dave's Trash Removal v. Charm City Equipment Corp.*, 214 *N.J.Super.* 497 (App.Div.1987). The defendant was charged by the plaintiff, a New Jersey resident, with breach of warranty. We there held that the truck had entered the stream of commerce in New Jersey and that the defendant corporation reasonably should have expected to be brought into a New Jersey court if the truck did not operate properly. *But see Helicopteros Nacionales de Columbia v. Hall*, 466 *U.S.* 408, 104 *S.Ct.* 1868, 80 *L.Ed.*2d 404 (1984) (if the claims do not arise in the forum state and are not related to it, contacts of a defendant corporation are more closely scrutinized). *Cf. Washington v. Magazzu*, 216 *N.J.Super.* 23 (App.Div.1987) (we found no jurisdiction over an attorney from Virginia sued for malpractice who had been contacted by a New Jersey lawyer to litigate a medical malpractice case for a New Jersey plaintiff in Virginia). *See also Bovino v. Brumbaugh*, 221 *N.J.Super.* 432 (App.Div.1987) (Pennsylvania physician who treated New Jersey resident's eye injury in Pennsylvania did not have sufficient contacts with New Jersey nor was it fair or reasonable for court to exercise jurisdiction over him).

Although the *Washington* court found no jurisdiction over a defendant who did not solicit business in New Jersey but was merely contacted by a New Jersey attorney, in *Makopoulos v. Walt Disney World*, 221 *N.J.Super.* 513 (App.Div.1987), we found that resort advertising specifically targeted to this State may under individual circumstances constitute sufficient minimum contacts. We there said: "thus it may well be that advertising, and particularly television advertising, can create sufficient contacts to justify *in personam* jurisdiction." *Id.* at 518. We remanded for further discovery on whether the New Jersey advertising lured the plaintiff to Florida. Here there is

no such assertion. While there is evidence before us showing Everglades advertised in "Pleasure Boating" and "Motor Boating and Sailing," national publications with circulations of about 8,000 in New Jersey, the advertisements do not target New Jersey purchasers nor did the alleged damages necessarily result as a consequence of the advertisements reaching the New Jersey market. *Cf. Keeton v. Hustler Magazine, Inc.,* 465 *U.S.* 770, 104 *S.Ct.* 1473, 79 *L.Ed.*2d 790 (1984).

Recent United States Supreme Court cases addressing the stream of commerce rationale have focused upon an investigation of the defendant's particular conduct in directing consumer goods into the forum. The Court in *Worldwide–Volkswagen Corp. v. Woodson,* 444 *U.S.* 286, 100 *S.Ct.* 559, 62 *L.Ed.*2d 490 (1980), refused to condone the exercise of jurisdiction; it held that even though an automobile was driven from New York, where it was purchased, to Oklahoma, the defendant seller's contacts with Oklahoma must be such that "he should reasonably anticipate being haled into court there" before jurisdiction could attach. *Id.* at 297, 100 *S.Ct.* at 567. In the case before us, the contact with the forum state is even more tenuous than in *World–Wide Volkswagen.* The boat never even arrived in New Jersey.

While New Jersey has generously exercised jurisdiction over non-residents to the limits permitted by the federal constitution, examination of the defendant's purposeful entry into the "stream of commerce" has remained an important aspect of our courts' weighing process. In *Charles Gendler & Co. v. Telecom Equipment Corp.,* 102 *N.J.* 460, 477 (1986), the Court held "we now adopt the stream of commerce theory as a basis for asserting personal jurisdiction over a non-resident defendant." While the defendant in *Gendler* had placed the product into New Jersey's stream of commerce, the Court found it necessary to remand the case for discovery as to whether the defendant

knew or reasonably should have known of the distribution system through which its products were being sold in the forum state.... The manufacturer's awareness of the distribution system satisfies the requirement that the manufacturer have a reasonable expectation that its products will be purchased in the forum state. [*Id.* at 480].

The Court concluded "accordingly, a manufacturer that knows its products are distributed through a nationwide distribution system should reasonably expect that those products would be sold throughout the fifty states and that it will be subject to the jurisdiction of every state." *Id.* at 481. Under the facts before us, no commercial distribution system brought the defendant boat into the state of New Jersey; nor did Everglades have a New Jersey sales office or maintain any other contacts with this State.

Purposeful entry into the "stream of commerce" has also been analyzed in two recent federal Supreme Court cases. In *Burger King Corp. v. Rudzewicz,* 471 *U.S.* 462, 473–474, 105 *S.Ct.* 2174, 2182–2183, 85 *L.Ed.*2d 528 (1985), the Court concluded that if corporations "purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for *consequences that arise proximately from such activities*" (emphasis added). Under the facts before us, there was no purposeful action in this State from which to derive benefit from New Jersey sales. Moreover, any consequence of breach of warranty did not occur in New Jersey.

Finally, in *Asahi Metals Industries Co. v. Superior Court,* 480 *U.S.* 102, 107 *S.Ct.* 1026, 94 *L.Ed.*2d 92 (1987), Justice O'Connor outlined the conditions under which entry into the stream of commerce may serve to make a defendant amenable to the jurisdiction of a foreign forum. That case involved an indemnity action between two Southeast Asian manufacturers who had already settled direct claims asserted by the original plaintiff, a California resident. Justice O'Connor writing for the plurality (Rehnquist, Powell, Scalia) criticized the California Supreme Court for deciding the case utilizing "the former interpretation of *Worldwide Volkswagen....* that because the

stream of commerce eventually brought [the component parts ...] into California it was sufficient to permit California to exercise jurisdiction over Asahi." *Id.* at ——, 107 *S.Ct.* at 1032, 94 *L.Ed.*2d at 103. The plurality held that in addition to a product entering the stream of commerce there must be a "substantial connection between the defendant and the forum state which ... must come about by an action of the defendant purposefully directed toward the forum State," citing *Burger King,* 471 *U.S.* at 476, 105 *S.Ct.* at 2184. Justice O'Connor concluded that placing a product into the stream of commerce without more, "is not an act of the defendant purposefully directed toward the forum State." *Id.* 480 *U.S.* at ——, 107 *S.Ct.* at 1033, 94 *L.Ed.*2d at 104. Under the test outlined by Justice O'Connor, the Court looked for some additional conduct of the defendant specifically targeted towards the forum: (1) evidence of an intent to serve the market; (2) advertising targeted to the state; (3) maintaining service or consumer advice centers in the state; or (4) marketing the product through a distributor in the state. Since the California personal injury plaintiff had already settled his claim, the interests of the state of California were lessened; the Court decided that it would be too severe a burden to force the Asian companies into the State of California to litigate contract claims. We find no evidence in this record that Everglades engaged in the types of purposeful acts in New Jersey described by Justice O'Connor in *Ashai Metals.*

■ Justice Brennan (joined by White, Marshall, Blackmun) rejected the stream of commerce test of the *Ashai* plurality and found that sufficient minimum contacts were established between the Asian companies and the state of California. However, Justice Brennan found that jurisdiction could not be maintained because the minimal contacts were outweighed by due process considerations of "fair play and substantial justice." *Id.* at ——, 107 *S.Ct.* at 1035, 94 *L.Ed.*2d at 107. Even utilizing Justice Brennan's more liberal test, we conclude that

assertion of our jurisdiction is still not warranted. As the O'Connor plurality concluded

In every case, however, those interests, as well as the Federal interests in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State. [*Id.* at ——, 107 *S.Ct.* at 1034–1035, 94 *L.Ed.*2d at 106].

This policy applies analogously to the facts before us. This was essentially a Florida, not a New Jersey, commercial transaction.

We conclude that New Jersey has no sufficient minimal contacts with Everglades. Nor did Everglades purposefully place its product into the stream of commerce in New Jersey. The burden of forcing Everglades to litigate the ramifications of an essentially Florida business transaction in New Jersey's courts is too severe to withstand constitutional scrutiny. *See* Duplantier, "Louisiana: A Forum, Conveniens Vel Non," 48 *La.L.Rev.* 761 (1988).

Reversed.