RICHARD LEBEL, PLAINTIFF–APPELLANT, v. EVERGLADES
MARINA, INC., DEFENDANT–RESPONDENT.

Argued January 31, 1989—Decided June 7, 1989.

*Steven Muhlstock* argued the cause for appellant (*Gittle-
man, Muhlstock & Meyers,* attorneys).

*Arthur D. Fialk* argued the cause for respondent (*Ozzard, Wharton, Rizzolo, Klein, Mauro, Savo & Hogan,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

In 1877, the Supreme Court subjected the concept of jurisdiction of the person to the measure of ordered liberty under the fourteenth amendment. *Pennoyer v. Neff,* 95 *U.S.* 714, 24 *L.Ed.* 565 (1877). Detached from the common law's familiar method of reifying abstract concepts (in this area, equating the jurisdiction of a forum with its physical power over the body or the object—*in personam* or *in rem* jurisdiction), courts have struggled to define the contours of the due process of law that will sustain the exercise of personal jurisdiction. *See* Greenstein, "The Nature of Legal Argument: The Personal Jurisdiction Paradigm," 38 *Hastings L.J.* 855, 855 (July 1987) ("The idea of black letter law seduces us. We crave coherence and certainty in the law as we do in many areas of our lives. We know better, of course. We know that legal doctrine is often indeterminate—that in a particular case, perfectly convincing arguments supporting one conclusion can often be countered by perfectly convincing arguments supporting the opposite conclusion. Yet we continue to search for rules, principles, tests, approaches—anything that will impose order on doctrine. Nowhere is the inherent frustration of this quest more vividly illustrated than in the debates concerning the due process limitations on the assertion of personal jurisdiction by state courts."); Leathers, "Supreme Court Voting Patterns Related to Jurisdictional Issues," 62 *Wash.L.Rev.* 631, 631 (1987). ("The past decade of development by the United States Supreme Court of constitutional law related to jurisdiction has been one of amazingly swift occurrences. * * * [S]ome of the justices' opinions were inconsistent, and were at odds with their votes in cases where they had not written opinions."); Perdue, "Sin, Scandal, and Substantive Due Process: Personal Jurisdiction and *Pennoyer* Reconsidered," 62 *Wash.L.Rev.* 479, 479

(1987) (" 'Confusion now hath made its masterpiece,' exclaims Macduff in Act II of Macbeth. The same might be said of the venerable case, *Pennoyer v. Neff.* Over 100 years after issuing *Pennoyer* the Supreme Court is still laboring to articulate a coherent doctrine of personal jurisdiction within the framework established by that opinion. * * * Yet despite this growing body of case law, the doctrinal underpinnings remain elusive." (footnotes omitted)); Seidelson, "A Supreme Court Conclusion and Two Rationales that Defy Comprehension: *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,*" 53 *Brooklyn L.Rev.* 563, 563 (1987) ("Every time I think I've learned an inch more of law, I discover a yard more about which I know nothing. * * * I felt that I understood the Court's conclusions and the reasons for those conclusions. And then came *Asahi.*").

One yearns for the certainty of autocracy, for one like a baseball umpire who would call the action fair or foul. It seems that little profit can be gained from an extended analysis of Supreme Court doctrine until the Court itself draws the lines as the umpire of federalism. In its last effort, the Court split four-four-one on its elucidation of a "stream-of-commerce" theory of jurisdiction.[1] *Asahi Metal Indus. Co. v. Superior Court*

---

[1] In *Asahi,* Justice Brennan, writing for four members of the Court, rejected the plurality's requirement of "additional conduct" directed at the forum to establish minimum contacts under a stream-of-commerce theory. In his view, "[t]he stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi, supra,* 480 *U.S.* at 117, 107 *S.Ct.* at 1035, 94 *L.Ed.*2d at 107 (Brennan, J., concurring). Despite his conclusion that there were sufficient minimum contacts, he nonetheless agreed that exercising personal jurisdiction over the defendant in that case "would not comport with 'fair play and substantial justice.'" *Id.* at 116, 107 *S.Ct.* at 1035, 94 *L.Ed.*2d at 107 (quoting *International Shoe Co. v. Washington,* 326 *U.S.* 310, 320, 66 *S.Ct.* 154, 160, 90 *L.Ed.* 95, 104 (1945)). Justice Stevens, writing for three members of the Court, expressed the view that because the Court found that the exercise of jurisdiction over the defendant would be "unreasonable and unfair," that

*of Cal.*, 480 *U.S.* 102, 107 *S.Ct.* 1026, 94 *L.Ed.*2d 92 (1987). In our last effort, *Charles Gendler & Co. v. Telecom Equipment Corp.*, 102 *N.J.* 460 (1986), we accepted the stream-of-commerce theory as a valid method of discerning the contours of due process. Rather than embark on a prediction of the future course of this stream of jurisprudence, we shall hew closely to the limited fundamentals about which there is little or no dispute or debate.

I

This case arises from a dispute over the purchase in Florida of a 1987 Cigarette SE 38–foot, high-speed, luxury racing boat. Plaintiff claims to have met a representative of the defendant, Everglades Marina, at the 1984 boat show in New York City. According to plaintiff, over the next two years "on at least twenty occasions" he received in New Jersey phone calls of solicitation from the defendant. There was discussion about price, what features were standard and what were extras on the boat, as well as plaintiff's intention to use the boat in New Jersey. Plaintiff claims that he eventually received and signed in New Jersey a Sales Agreement for the purchase of the boat. In about June of 1986, plaintiff took delivery and registered his boat in Florida.

Subsequent to the purchase, plaintiff hired a third-party shipper to bring the boat to New Jersey. The boat never made it. The carrier had an accident en route and the vessel was substantially damaged. The boat was returned to Florida and sold by the plaintiff. However, in negotiating his claims for recovery for the accidental damage, plaintiff learned that this

---

finding by itself precluded jurisdiction. 480 *U.S.* at 121, 107 *S.Ct.* at 1038, 94 *L.Ed.*2d at 110 (Stevens, J., concurring). In his view, it was therefore unnecessary to reach the question of whether minimum contacts had been established. *Ibid.* He nevertheless went on to question the majority's application of the facts of this case to the "minimum contacts" theory it put forward. *Id.* at 122, 107 *S.Ct.* at 1038, 94 *L.Ed.*2d at 110–111.

defendant may have defrauded him in connection with the sale. This suit, demanding a return of a portion of the purchase price and other relief, followed in the New Jersey Superior Court.

The defendant made a motion to dismiss the complaint for lack of personal jurisdiction. The trial court denied the defendant's motion, relying on the fact that "[i]t is undisputed in the case at bar that defendant knew plaintiff to be a New Jersey resident." The court specifically rejected any reliance on the fact that the boat show, where plaintiff claims to have first made contact with the defendant, was advertised in New Jersey.

The Appellate Division reversed, 225 *N.J.Super.* 316, 318 (1988), holding

that insufficient minimum contacts existed between the defendant corporation and this State and that the defendant did not purposefully avail itself of New Jersey as a place to do business or intentionally put its product in the stream of commerce in this State. In fairness to the defendant and in the interest of allocative efficiency, this forum will not assert *in personam* jurisdiction in this case.

The panel rejected any claim to minimum contacts under a stream-of-commerce theory, noting that "there was no purposeful action in this State from which to derive benefit from New Jersey sales. Moreover, any consequence of breach of warranty did not occur in New Jersey." *Id.* at 322. The opinion also took special notice of the fact that "[t]he boat never even arrived in New Jersey." *Id.* at 321. Finally, the panel concluded that "[t]his was essentially a Florida, not a New Jersey, commercial transaction," and that

New Jersey has no sufficient minimal contacts with Everglades. Nor did Everglades purposefully place its product into the stream of commerce in New Jersey. The burden of forcing Everglades to litigate the ramifications of an essentially Florida business transaction in New Jersey's courts is too severe to withstand constitutional scrutiny. [*Id.* at 324.]

We granted certification. 111 *N.J.* 649 (1988).

II

As noted, we shall attempt to avoid any areas of unsettled jurisprudence. Hence we shall not predicate our result on the

"stream-of-commerce" theory of jurisdiction. Rather, we shall stay with the basics. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 *U.S.* 310, 316, 66 *S.Ct.* 154, 158, 90 *L.Ed.* 95, 102 (1945) (quoting *Milliken v. Meyer*, 311 *U.S.* 457, 463, 61 *S.Ct.* 339, 342, 85 *L.Ed.* 278, 283 (1940)). Although the *Asahi, supra,* Court was divided, this basic and familiar two-part test was nonetheless accepted by all of the Justices writing. We shall discuss the two aspects of the test, "minimum contacts" and· "fair play and substantial justice."

## A.

### Does the Everglades Marina have certain minimum contacts with New Jersey?

At this point, we must digress slightly to note that the Supreme Court varies the measure of minimum contacts depending on the nature of the case. If the cause of action relates directly to the contacts, as here, it is one of "specific jurisdiction." "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 *U.S.* 408, 414 n. 9, 104 *S.Ct.* 1868, 1872 n. 9, 80 *L.Ed.*2d 404, 411 n. 9 (1984). Commentators have questioned the application of these distinctions between "dispute-blind and dispute-specific" jurisdiction concepts. Twitchell, "The Myth of General Jurisdiction," 101 *Harvard L.Rev.* 610, 614 (1988) ("encourag[ing] courts to think seriously about the meaning of the general/specific jurisdiction typology that they have so eagerly embraced before they commit themselves to an unnecessarily constrained view of the scope of their adjudicatory power."). Nevertheless,

our Court in *Gendler* implicitly endorsed the Supreme Court's "specific"/"general" jurisdiction dichotomy. *See Gendler, supra*, 102 *N.J.* at 471–72.

General jurisdiction subjects the defendant to suit on virtually any claim, even if unrelated to the defendant's contacts with the forum, but is unavailable unless the defendant's activities in the forum state can be characterized as "continuous and systematic" contacts. *Helicopteros Nacionales, supra*, 466 *U.S.* at 416, 104 *S.Ct.* at 1873, 80 *L.Ed.*2d at 412. The greater measure of the contacts for general jurisdiction is deemed relevant because of the limited interest of the forum state in entertaining the coincidental litigation. *Bearry v. Beech Aircraft Corp.*, 818 *F.*2d 370, 374 (5th Cir.1987).

In the context of specific jurisdiction, the minimum contacts inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 *U.S.* 186, 204, 97 *S.Ct.* 2569, 2579, 53 *L.Ed.*2d 683, 698 (1977) (mere presence in the forum state of defendant's property that is unrelated to the cause of action is insufficient to establish personal jurisdiction), *quoted in Keeton v. Hustler Magazine, Inc.*, 465 *U.S.* 770, 775, 104 *S.Ct.* 1473, 1478, 79 *L.Ed.*2d 790, 798 (1984) (defendant's regular circulation of magazine in forum state is sufficient to establish personal jurisdiction over libel action); *Calder v. Jones*, 465 *U.S.* 783, 789, 104 *S.Ct.* 1482, 1486, 79 *L.Ed.*2d 804, 811–12 (1984) (defendant is subject to personal jurisdiction based solely on alleged intentional and libelous conduct in Florida "expressly aimed at California"). The "minimum contacts" requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff. *World–Wide Volkswagen Corp. v. Woodson*, 444 *U.S.* 286, 297–98, 100 *S.Ct.* 559, 567–68, 62 *L.Ed.*2d 490, 501–02 (1980).

"This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 *U.S.* 462, 475, 105 *S.Ct.* 2174,

2183, 85 *L.Ed.*2d 528, 542 (1985) (quoting *Keeton, supra,* 465 *U.S.* at 774, 104 *S.Ct.* at 1478, 79 *L.Ed.*2d at 797; *World–Wide Volkswagen, supra,* 444 *U.S.* at 299, 100 *S.Ct.* at 568, 62 *L.Ed.*2d at 502). The question is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen, supra,* 444 *U.S.* at 297, 100 *S.Ct.* at 567, 62 *L.Ed.*2d at 501. Of course, the mere foreseeability of an event in another state is "not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King, supra,* 471 *U.S.* at 474, 105 *S.Ct.* at 2183, 85 *L.Ed.*2d at 542 (quoting *World–Wide Volkswagen, supra,* 444 *U.S.* at 295, 100 *S.Ct.* at 566, 62 *L.Ed.*2d at 500). Thus, we must determine whether defendant purposely created contacts with New Jersey.

We find that facts have been pled that support a finding that the defendant's activities in regard to the specific sale at issue established sufficient contacts with the forum state. (The parties have not sought to distinguish the various counts of the complaint. One count alleges only negligent repair of the yacht at the Florida marina.) This is not a situation in which the plaintiff unilaterally brought about the contacts. *Cf. World–Wide Volkswagen, supra* (out-of-state automobile distributor's only tie to the forum resulted from a customer's decision to drive there); *Kulko v. Superior Court of Cal.,* 436 *U.S.* 84, 93–94, 98 *S.Ct.* 1690, 1697–98, 56 *L.Ed.*2d 132, 142 (1978) (personal jurisdiction in custody action cannot be based solely on plaintiff's residence in forum state) (dictum); *Hanson v. Denckla,* 357 *U.S.* 235, 78 *S.Ct.* 1228, 2 *L.Ed.*2d 1283 (1958) (trustee's only connection with forum was the result of settlor exercising her power of appointment there); *Northern Propane Gas Co. v. Kipps,* 127 *Ariz.* 522, 622 *P.*2d 469 (1980) (*en banc*) (Michigan company that had filled propane tanks had no relationship to Arizona other than that it knew tanks were destined there).

Rather, this defendant allegedly telephoned the buyer in New Jersey to iron out the details of the contract, mailed the

contract to the buyer in New Jersey for signing in New Jersey, and received payment from the plaintiff, who defendant knew was a New Jersey resident. *See McGee v. International Life Ins. Co.*, 355 *U.S.* 220, 78 *S.Ct.* 199, 2 *L.Ed.*2d 223 (1957) (forum was state where insured accepted insurance policy and paid premiums). We need not rely on the additional material submitted by the plaintiff supplementing the record below that attempted to demonstrate that the defendant sought to penetrate the New Jersey market by advertising in media that generally circulated in New Jersey. *See Makopoulos v. Walt Disney World, Inc.*, 221 *N.J.Super.* 513 (App.Div.1987) (matter remanded to Law Division to consider whether advertising in State drew plaintiff to Florida facility).

Of course, the mere transmittal of messages by mail or telephone within the state is not the critical factor, it is the nature of the contact. *Baron & Co. v. Bank of N.J.*, 497 *F.Supp.* 534 (E.D.Pa.1980) (fact that defendant had made phone calls, mailed checks, and sent correspondence to plaintiff in Pennsylvania is not sufficient to draw defendant into Pennsylvania for purposes of personal jurisdiction); *Pennsylvania Mfrs. Ass'n Ins. Co. v. Township of Gloucester*, 493 *F.Supp.* 1047 (E.D.Pa.1980) (Pennsylvania insurer could not sue foreign municipality in forum state despite two complaint letters sent to insurer in forum state). But when a merchant uses the instrumentalities of commerce to tap an interstate market for its product, such wire and mail communications are relevant contacts to be considered. *United Coal Co. v. Land Use Corp.*, 575 *F.Supp.* 1148, 1157 (W.D.Va.1983) (fact that "[t]elephone conversations, telexes and letters traveled to and from the state, establishing an agreement" considered as part of the contacts sustaining jurisdiction of the forum); *Hoster v. Monongahela Steel Corp.*, 492 *F.Supp.* 1249 (W.D.Okla.1980) (defendants who made several telephone calls to plaintiff, corresponded twice with plaintiff, and sent agent to negotiate with plaintiff held to have sufficient contacts to establish jurisdiction

in plaintiff's state). Remember that in this case it is alleged that the defendant's representations via mail and telephone to New Jersey were fraudulent.

> We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to the jurisdiction of another state by sending a personal messenger into that state bearing a fraudulent misrepresentation but not when it follows the more ordinary course of employing the United States Postal Service as its messenger. * * * Where a defendant knowingly sends into a state a false statement, intending that it should then be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state.
>
> [*Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1066 (4th Cir.1982) (quoting *Murphy v. Erwin–Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir.1972) (citations omitted)).]

Some confusion on the relevance of the use of mails, telephone, or other communication may arise from the qualitative nature of contacts required to establish the "systematic and continuous course of business" that sustains general jurisdiction. *See Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1254 (9th Cir.1980) (holding isolated acts by the defendant in the forum state unrelated to the cause of action insufficient to establish personal jurisdiction). "When, however, a non-resident defendant purposely directs its activities to the forum, and the litigation results from alleged injuries that arise out of or relate to those activities, the forum may assert personal jurisdiction over the defendant." *Hughes v. Balemaster, Inc.*, 652 F.Supp. 1350, 1351–52 (E.D.Mo.1987); *see also Maglio & Kendro, Inc. v. Superior Enerquip Corp.*, 233 N.J.Super. 388 (App.Div.1989) (finding personal jurisdiction over nonresident defendant who telephoned plaintiff located in forum state to solicit performance of services). Contrary New Jersey cases dealing with the significance of telephone contacts are distinguishable. *See DeLear v. Rozel Packing Corp.*, 95 N.J.Super. 344 (App.Div. 1967) (incidental telephone contacts from New York lender to New Jersey borrower not sufficient to establish personal jurisdiction in trustee's suit to set aside preference); *William Sternberg & Assoc. v. Litho Supply, Inc.*, 219 N.J.Super. 201, 205 (Law Div.1987) ("mere broker" in sale of goods neither

manufactured in nor destined for New Jersey cannot establish jurisdiction based on telephone negotiations and choice of law clause). We find that in this case of specific jurisdiction the pleadings support a finding that, at least for the purposes of this sale, the defendant purposely directed his activities at the forum state.

The limited nature of those contacts does not defeat the jurisdiction of the court. Rather, it goes more properly to the second prong of the test, which would be to consider whether it would offend traditional notions of fair play and substantial justice to entertain the suit. In *Burger King*, the Court found specific jurisdiction based on relatively few contacts between the nonresident defendant and the forum state of Florida. Rudzewicz was a Burger King franchise owner who lived in Michigan and claimed he had dealt primarily with the Michigan office. 471 *U.S.* at 487–90, 105 *S.Ct.* at 2190–91, 85 *L.Ed.*2d at 550–51 (Stevens, J., dissenting). However, because his contract contained a Florida choice-of-law clause, required payments to be made in Florida, and was negotiated and supervised from Burger King's Florida Headquarters, there was a "purposeful availment" of Florida's laws and a reasonable basis on which to anticipate litigation in Florida. *Id.* at 479–82, 105 *S.Ct.* at 2185–87, 85 *L.Ed.*2d at 545–47. In this case, defendant's alleged phone calls to New Jersey and use of the mails to solicit the contract would satisfy the minimum-contacts requirement. Moreover, given that the defendant knew that plaintiff was a New Jersey resident, as well as plaintiff's claim that defendant was informed that the boat would be shipped to New Jersey, this seems like the type of case referred to in *Keeton v. Hustler Magazine, Inc.*, *supra*, in which "plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum." 465 *U.S.* at 780, 104 *S.Ct.* at 1481, 79 *L.Ed.*2d at 801. The mere fact that neither defendant nor the boat was ever physically present in New Jersey does not preclude a finding that minimum contacts existed. As the Supreme Court stated in *Burger King, supra,*

> [a]lthough territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. [471 *U.S.* at 476, 105 *S.Ct.* at 2184, 85 *L.Ed.*2d at 543.]

There can be no doubt that defendant was well aware that this sale would have direct consequences in New Jersey such that it should have been aware of the possibility of litigation arising in that forum. *See Calder v. Jones, supra,* 465 *U.S.* 783, 104 *S.Ct.* 1482, 79 *L.Ed.*2d 804.

### B.

Would entertainment of jurisdiction in New Jersey "offend 'traditional notions of fair play and substantial justice' "?

Of course, once it is established that defendant's activities relating to the action established minimum contacts with the forum state, the "fair play and substantial justice" inquiry must still be made. But a nonresident defendant who has been found to have minimum contacts with the forum "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King, supra,* 471 *U.S.* at 477, 105 *S.Ct.* at 2184, 85 *L.Ed.*2d at 544. This determination requires evaluation of such factors as "the burden on the defendant, the interests of the forum State, * * * the plaintiff's interest in obtaining relief[,] * * * 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.' " *Asahi, supra,* 480 *U.S.* at 113, 107 *S.Ct.* at 1034, 94 *L.Ed.*2d at 105 (quoting *World–Wide Volkswagen, supra,* 444 *U.S.* at 292, 100 *S.Ct.* at 564, 62 *L.Ed.*2d at 498 (citations omitted)). Although the burden on Everglades Marina to defend this action in New Jersey is perhaps slightly greater than the hypothetical burden on Lebel in bringing the suit in Florida,

a slight imbalance will not defeat jurisdiction. Everglades has failed to point to an inability to present any evidence that would have been available in Florida. Unlike the defendant in *Asahi*, who, in addition to crossing the Pacific to get to California, would have had to contend with a foreign legal system, *Asahi, supra*, 480 *U.S.* at 114, 107 *S.Ct.* at 1034, 94 *L.Ed.*2d at 105, Everglades need travel only to New Jersey to confront a reasonably familiar legal system. In addition, the case could possibly be removed to federal court. A trip from Ft. Lauderdale to Newark Airport is not qualitatively that different from one from Ft. Lauderdale to Tallahassee.

Certainly New Jersey has a legitimate interest in carrying out its own law [2] and protecting its creditors. By contrast, in *Asahi* the plaintiff was not a resident of California, the forum state, and California's interest was practically nonexistent in handling the indemnification issue between Asahi and a Taiwanese corporation. *Id.* at 114–15, 107 *S.Ct.* at 1034–35, 94 *L.Ed.*2d at 106.

Given the relative standings of these parties and the interests of the sovereign, we are unable to conclude that it offends our notions of fair play or substantial justice that this rather significant contract be examined in a New Jersey court. *See McGee v. International Life Ins. Co., supra*, 355 *U.S.* 220, 78 *S.Ct.* 199, 2 *L.Ed.*2d 223; *Avdel Corp. v. Mecure*, 58 *N.J.* 264 (1971); *Dave's Trash Removal v. Charm City Equip. Corp.*, 214 *N.J.Super.* 497 (App.Div.1987).

### III

Of course, we realize that this result pushes at the "outermost limit" of personal jurisdiction. *Dave's Trash Removal, supra*, 214 *N.J.Super.* at 500. We would not say that a Florida bicycle retailer who sold a bike to a New Jersey resident, even

---

[2] We do not mean to imply that New Jersey law would necessarily govern the contract in this case. We make no decision on that issue, which has not been presented to this Court.

if by mail, would necessarily be subject to suit in New Jersey. While there may be no conceptual difference between the seller of the $200 bicycle and the $200,000 yacht in terms of minimum contacts, the second prong of fairness in the due-process test requires consideration of the seller's expectations. The occasional seller of a low-price item for the convenience of an out-of-state buyer should not "reasonably anticipate being haled into court" in any state where the plaintiff happens to reside. *World–Wide Volkswagen, supra,* 444 *U.S.* at 297, 100 *S.Ct.* at 567, 62 *L.Ed.*2d at 501. In comparison, the marketer of a big-ticket luxury item that accomplishes the sale by solicitation of the out-of-state buyer in the buyer's state can fairly be expected to contemplate that a breach of contract will expose it to a suit in the forum of the buyer. We thus find that it does not offend our notions of substantial justice and fair play to ask the seller of the special-order, luxury vessel to account for its negotiations of this transaction in a New Jersey court.

The judgment of the Appellate Division is reversed and the matter remanded to the Law Division for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.