**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3720-22

E.T.,

      Plaintiff-Respondent,

v.

THE BOYS AND GIRLS CLUB
OF HUDSON COUNTY, f/k/a,
THE JERSEY CITY BOYS CLUB,

      Defendant-Respondent,

and

BOYS AND GIRLS CLUBS OF
AMERICA,[1]

      Defendant-Appellant.

_____

A.M.,

      Plaintiff-Respondent,

v.

BOYS AND GIRLS CLUBS OF
HUDSON COUNTY,

      Defendant-Respondent,

<div style="border:1px solid black; padding:8px; display:inline-block;">

**APPROVED FOR PUBLICATION**

**February 28, 2024**

**APPELLATE DIVISION**

</div>

---

[1] Appellant Boys and Girls Clubs of America was improperly pled below as Boys and Girls Club of America, f/k/a Boys Clubs of America.

and

BOYS AND GIRLS CLUBS OF
AMERICA,

Defendant-Appellant.

_____

A.R.,

Plaintiff-Respondent,

v.

BOYS AND GIRLS CLUBS OF
AMERICA,

Defendant-Appellant,

and

BOYS AND GIRLS CLUBS OF
HUDSON COUNTY f/k/a JERSEY
CITY BOYS' CLUB, and ARTHUR
FREUDENBERG,

Defendants-Respondents.

_____

A.R.2,

Plaintiff-Appellant,

v.

BOYS AND GIRLS CLUBS OF
AMERICA,

Defendant-Appellant,

and

BOYS AND GIRLS CLUB OF HUDSON COUNTY f/k/a JERSEY CITY BOYS CLUB, and ARTHUR FREUDENBERG,

Defendants-Respondents.

_____

E.R., and R.R.,

Plaintiffs-Respondents,

v.

THE BOYS AND GIRLS CLUB OF HUDSON COUNTY, f/k/a THE JERSEY CITY BOYS CLUB,

Defendant-Respondent,

and

BOYS AND GIRLS CLUBS OF AMERICA,

Defendant-Appellant.

_____

J.A., A.M., and G.M.,

Plaintiffs-Respondents,

v.

THE BOYS AND GIRLS CLUB OF
HUDSON COUNTY, f/k/a, THE
JERSEY CITY BOYS CLUB,

      Defendant-Respondent,

and

BOYS AND GIRLS CLUBS OF
AMERICA,

      Defendant-Appellant.

_____

Argued January 23, 2024 – Decided February 28, 2024

Before Judges Sumners, Rose and Smith.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Docket Nos. L-3355-20, L-1307-21, L-3892-21, L-4042-21, L-1442-22, and L-1908-22.

Michael L. Eber (Caplan Cobb, LLC) of the Georgia bar, admitted pro hac vice, argued the cause for appellant (Fishman McIntyre Levine Samansky, PC, and Michael L. Eber, attorneys; Mitchell B. Levine and Michael L. Eber, on the briefs).

J. Silvio Mascolo argued the cause for respondents E.T., E.R., R.R., J.A., A.M., and G.M. (Rebenack, Aronow & Mascolo, LLP, attorneys; J. Silvio Mascolo, of counsel and on the briefs).

Levy Kongisberg, LLP, attorneys for respondent A.M., join in the brief of respondents E.T., E.R., R.R., J.A., A.M., and G.M.

The opinion of the court was delivered by

SUMNERS, JR., C.J.A.D.

This appeal requires us to determine whether an out-of-state non-profit national youth organization affiliated with a New Jersey non-profit youth member organization is subject to the jurisdiction of our state courts in a lawsuit pertaining to the alleged sexual abuse by a counselor of the New Jersey entity occurring in our state. Based on jurisdictional discovery, the motion court held our state courts had specific personal jurisdiction over the national organization regarding plaintiffs' sexual abuse claims. We disagree and reverse.

Jurisdictional discovery revealed the national organization had no influence or control over the New Jersey entity's hiring, training, or supervision of the alleged sexual abuser. We thus conclude the national organization did not purposefully avail itself of benefits in or from New Jersey regarding the alleged sexual abuser, and hence, our state has no specific personal jurisdiction over the national organization in this matter.

I.

In six consolidated lawsuits, plaintiffs allege that Arthur Freudenberg, while a part-time counselor for the Jersey City Boys Club, now known as the

A-3720-22

Boys & Girls Clubs of Hudson County (Hudson County BGC),[2] sexually abused them between approximately 1978 to 1982, when they were members of the club.[3]  Seeking compensatory and punitive damages, plaintiffs sued the New Jersey non-profit, Hudson County BGC and Boys & Girls Clubs of America (BGCA), the affiliated national organization.[4]

After the parties were allowed discovery to determine whether our state has jurisdiction over BGCA due to its involvement with its member organization, Hudson County BGC, BGCA moved under Rule 4:6-2(b) to dismiss the complaints for lack of jurisdiction.  The motion was denied.  The court ruled New Jersey does not have general jurisdiction over BGCA but found specific personal jurisdiction because BGCA purposefully availed itself of New Jersey through its relationship with Hudson County BGC.

---

[2]  For convenience and to avoid confusion, we refer to the Jersey City Boys Club organization as Hudson County BGC throughout the entirety of the period when the alleged assaults occurred.

[3]  Plaintiffs allege Freudenberg was charged with 493 counts of aggravated sexual assault on boys ages eleven to thirteen but pled guilty to only five charges.

[4]  Two plaintiffs also sued Freudenberg.  Claims against Freudenberg are not involved in this appeal.

A-3720-22

On leave to appeal, BGCA contends the motion court erred in determining New Jersey courts have specific personal jurisdiction over BGCA in these lawsuits. Specifically, it argues the court's order rests on four incorrect factual findings: (1) Hudson County BGC, where plaintiffs were allegedly abused, was under BGCA's control; (2) the alleged abuser was a BGCA employee; (3) BGCA "marketed" its program in New Jersey when allowing Hudson County BGC to use BGCA's logo and branding in obtaining membership; and (4) BGCA provided services to Hudson County BGC.

II.

The issue of whether New Jersey has specific personal jurisdiction over BGCA due to Freudenberg's alleged sexual abuse of plaintiffs is a mixed question of law and fact. Rippon v. Smigel, 449 N.J. Super. 344, 358 (App. Div. 2017).[5] We therefore determine whether the motion court's factual findings "are supported by substantial, credible evidence in the record" and review de novo its legal conclusions. Ibid. (citing Mastondrea v. Occidental Hotels Mgmt. S.A., 391 N.J. Super. 261, 268 (App. Div. 2007)).

---

[5] We do not address whether New Jersey has general jurisdiction over BGCA because there is no challenge to the motion court's ruling that New Jersey does not have general justification over BGCA.

Due process dictates that for a forum state to have specific personal jurisdiction over a non-resident defendant, the defendant must "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); see also Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322 (1989). We have held "for a state court to exercise [specific] jurisdiction over a non[-]resident defendant, the lawsuit 'must aris[e] out of or relat[e] to the defendant's contacts with the forum.'" Jardim v. Overley, 461 N.J. Super. 367, 376 (App. Div. 2019) (third and fourth alterations in original) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)); accord Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994), cert. denied sub nom. WMX Techs., Inc. v. Canadian Gen. Ins. Co., 513 U.S. 1183 (1995).

There must be a "relationship among the defendant, the forum, and the litigation" to establish minimum contacts. Lebel, 115 N.J. at 323 (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). A defendant's conduct must be purposeful and not be caused by the plaintiff's unilateral actions. Ibid. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)); see also Hanson v. Denckla, 357 U.S. 235, 253 (1958). The conduct in our state

8

should be "such that [the defendant] should reasonably anticipate being haled" into our courts. World-Wide Volkswagen Corp., 444 U.S. at 297. Moreover, "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 113 (1987).

III.

Guided by the above principles, we examine the factual record regarding the BGCA and Hudson County BGC, particularly the latter's employment of Freudenberg.

BGCA, a federally charted District of Columbia non-profit corporation with its principal place of business in Georgia, was established as a Boys Club of America in 1956 "to promote the health, social, educational, vocational and character development of all boys throughout the United States."[6] Act of Aug. 6, 1956, Pub. L. No. 84-988, 70 Stat. 1052 (current version at 36 U.S.C. §

---

[6] In 1990, after the Boys Club of America began accepting female members, the organization's charter was amended to adopt its current name. For convenience and to avoid confusion, we do not alter the boys-only reference in the BGCA's charter and by-laws that existed when the alleged abuse occurred. Our Mission & Story, Boys & Girls Clubs of America https://www.bgca.org/about-us/our-mission%20story#:~:text=In%201956%2C%20Boys%20Clubs%20of,amended%20and%20renewed%20our%20charter (last visited Feb. 12, 2024).

31102(1)).  The organization's activities are "not confined to the place where the principal office is located but may be conducted throughout the States, territories, and possessions of the United States."  36 U.S.C. § 31107.  BGCA, in accordance with its constitution, provides "national leadership in the development of the Boys' Clubs of America movement [through] activities which will enable member organizations to render better service to their boy members; and . . . assistance to communities in the establishment of new Boys' Clubs."

A "[m]ember [o]rganization" as defined under BGCA's constitution is "a corporation, association, administrative committee or otherwise named governing body which operates one or more Boys' Clubs in accordance with the requirements herein, and which has been admitted to membership in Boys' Clubs of America."  A "Boys' Club" is a club "which meets the requirements established [under BGCA's Constitution]."  BGCA's constitution section, "Requirements for Membership," provides that "[a]ny corporation, association, administrative committee or otherwise named governing body . . . which meets the minimum requirements established here may be elected to membership . . . ."  Moreover, a member organization's "[f]ailure to comply with membership requirements could result in an organization having their membership revoked

or leaving membership in [BGCA] during that time, and at that time would not be able to use the name, logo, or programs associated with BGCA." Member organizations are required to pay annual dues to BGCA.

BGCA's involvement with its member organizations is limited. Its constitution provides:

> The local governing body shall have control of the Boys' Club buildings or designated Boys' Club rooms; shall have control of the expenditures of the Boys' Club within an established budget; shall have authority to determine policies and establish programs; shall have authority to appoint the executive and fix his compensation, prescribe his duties and the terms of his employment; shall have authority to fix the compensation of other employees; and shall have the authority, or delegate the authority to the executive, to hire and discharge employees and prescribe their duties.

The constitution also provides, the local governing body's executive director shall "be acceptable to [BGCA], [and] be responsible directly . . . to the local governing body," and "have executive and administrative control of activities and personnel of the member organization in accordance with policies and procedures established by the . . . local governing body."

While BGCA supports its member organizations, it does not provide services to the local organization's youth members. As for the services made available to member organizations, John Miller, BGCA's National Vice

11

President of Field Operations, deposed that "no member or organization is required to use any of the services that they are provided as part of the[ir] membership[,] and organizations can determine based on their needs and their priorities which services they take advantage of."  Miller confirmed member organizations were required to employ workers who were "qualified in personality, character, experience, education, and training for the leadership and guidance of boys."

However, according to Miller:

> [A]s part of the [BGCA] constitution . . . local organizations have the sole authority for the hiring, evaluation, training, conditioning of employees and [BGCA] has no authority there, so [the local organizations] would determine the suitability of someone for hiring within their organization.
>
>        . . . .
>
> Each local organization would be looking at the type of personality, character, experience, education[,] and training that would — they would need to carry out their program on the local level.
>
> [(Emphasis added).]

During the time of Freudenberg's alleged sexual assaults, Hudson County BGC was a New Jersey nonprofit corporation and a dues-paying local governing body member of BGCA.  Plaintiffs were members of the Hudson County BGC.

12

There is nothing in the record indicating that BGCA had any input in Hudson County BGC's hiring practices or gave direction to Hudson County BGC regarding the training or supervision of the local governing body's employees. Nor is there any indication that during the period of the alleged assaults or when these suits were filed, BGCA owned any real property in New Jersey.

IV.

A.

Plaintiffs' consolidated lawsuits essentially make the same allegations regarding BGCA's liability for Freudenberg's alleged assaults. They allege BGCA is liable for their injuries caused by Freudenberg's sexual abuse based on violation of the Child Sex Abuse Act, N.J.S.A. 2A:61B-1, and theories of negligence, and willful, wanton or grossly negligent conduct. They claim Freudenberg was an agent, servant, or employee of BGCA, and as such, BGCA failed to use reasonable care in hiring and supervising him or in protecting them from his abuse and is vicariously responsible for his conduct. They claim BGCA failed to train Hudson County BGC to prevent the foreseeable acts of Freudenberg's sexual abuse. Finally, plaintiffs allege Hudson County BGC was under the supervision and control of BGCA, and, therefore responsible for overseeing Hudson County BGC's staff.

B.

The motion court ruled that under principles established in Lebel and Baanyan Software Services, Inc. v. Kuncha, 433 N.J. Super. 466, 476 (App. Div. 2013), "BGCA purposefully availed itself of the New Jersey forum" which "relates to the claims by [p]laintiffs." The court further relied on Ford Motor Co. v. Montana Eighth Judicial District Court, 141 S. Ct. 1017, 1022, 1028 (2021), where the United States Supreme Court concluded that Ford was subject to personal jurisdiction in certain states where Ford systematically marketed, sold, and serviced its vehicles, even though the Ford vehicles involved in the accidents in the forum states were not sold in those states. The court determined the situation here was like that in Ford, reasoning:

> BGCA provides to local clubs "marketing support, strategic planning support, leadership development and training, facility, consultations." . . . Moreover, the local clubs use the BGCA logo and branding. Significantly, the local clubs benefit from the "market value in terms of name recognition and public trust" of the BGCA. In return, BGCA collects dues from its member clubs. The alleged wrong—sexual abuse by a [Hudson County BGC] employee against [Hudson County BGC] members—relates directly to the BGCA's conduct in New Jersey. In other words, BGCA marketed its youth clubs in New Jersey, and an employee abused a patron. Accordingly, BGCA is subject to personal jurisdiction in these consolidated matters.

14

C.

We part company with the motion court's finding that there is specific personal jurisdiction over BGCA. We agree the record reflects, as the court recognized: BGCA had contacts with New Jersey through its relationship with the Hudson County BGC; BGCA received membership dues from Hudson County BGC to be a member of BGCA; BGCA provided support, including in-person training, to Hudson County BGC pertaining to sports, fitness, recreation, education, the arts, leadership, citizenship, and development to enhance Hudson County BGC's recruitment and retention of members, like plaintiffs; and that BGCA provided leadership and training to Hudson County BGC to ensure stability of the local club. These connections, however, do not cause us to conclude that BGCA availed itself to New Jersey with respect to specific personal jurisdiction regarding plaintiffs' allegations of Freudenberg's sexual abuse.

The gravamen of plaintiffs' allegations against BGCA is that it is liable for Freudenberg's misconduct because it was responsible for his hiring, training, and supervising. The record does not reflect BGCA maintained control over the hiring, training, supervising, or termination of any Hudson County BGC employee. Instead, the record demonstrates, Freudenberg was not an agent,

servant, or employee of BGCA—as plaintiffs pled in their respective complaints—subject to BGCA's control or supervision. Plaintiffs have presented no credible evidence contradicting the deposition testimony of Miller that local clubs, such as Hudson County BGC, solely hire, evaluate, and train their employees without the oversight of BGCA. There is no evidence that BGCA monitored or directed Hudson County BGC staff. See Waste Mgmt., 138 N.J. at 126 (citing Calder v. Jones, 465 U.S. 783, 791 (1984)).

While Hudson County BGC's executive director must be "acceptable" to BGCA, the record does not show BGCA compelled, or could compel, the executive director or other local club staff to undergo any mandated training for their roles or the supervision of staff. Hudson County BGC's executive director managed the local club's operations and reported to the club's trustees, not to BGCA. Significantly, there is no indication that BGCA had any knowledge about Freudenberg's abusive propensities or should have known of them based upon involvement with Hudson County BGC.

Plaintiffs argue Hudson County BGC's affiliation with BGCA, use of the BGCA brand to market its services to the local community, and access to BGCA's programmatic and financial guidance establish contact with New Jersey warranting our state court's jurisdiction over BGCA. This is unpersuasive.

16

Specific personal jurisdiction does not exist over BGCA merely because it offered resources to local clubs and "might have predicted" a New Jersey club would use those resources. See J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 882 (2011) ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."). BGCA's support must relate to Freudenberg's alleged sexual abuse for it to avail itself of New Jersey courts. Since plaintiffs have not shown there are facts indicating minimum contacts in New Jersey, for which BGCA would have reasonably expected to be a party in our state, BGCA should not be a defendant in these matters. See Int'l Shoe Co., 326 U.S. at 316-17 (1945).

The facts here are unlike those in our recent published opinion in JA/GG Doe 70 v. Diocese of Metuchen, ___ N.J. Super. ___, ___ (App. Div. 2023) (slip op. at 15-16),[7] where we concluded there was substantial credible evidence showing New Jersey had specific personal jurisdiction over the Diocese of

_____

[7] Because Metuchen was issued after the parties submitted their merits briefs, the parties accepted our invitation to submit supplemental briefs regarding the impact of that decision on this appeal.

Richmond in Virginia arising from its connection with a Catholic priest who sexually abused children in New Jersey while serving in the Diocese of Metuchen.  Judge Gilson, speaking for our court concluded:

> [T]he facts here establish that [the Diocese of] Richmond acted with intent to avail itself of a benefit in New Jersey by sending one of its troubled priests to New Jersey.  The credible evidence in the record establishes that [the Diocese of] Richmond was not willing to suspend [the priest] from his priestly duties until 2002.  In 1970, and again in 1982, [the Diocese of] Richmond purposefully availed itself of New Jersey by encouraging and allowing [the priest] to go and remain as an active priest in New Jersey.
>
> [Id. at 19.]

The Diocese of Richmond was aware the priest sexually abused at least three children when he served there.  Id. at 13.  The Diocese of Richmond, as the priest's ordaining and incardinating[8] diocese, retained sole and ongoing power to control and terminate the priest.  Id. at 12-15.

In contrast with the Diocese of Richmond's involvement with the sexual abuser in Metuchen, BGCA had no such connection with Freudenberg's

---

[8]  "[A]n ecclesiastical term indicating a priest's acceptance into a diocese." Metuchen, ___ N.J. at ___ (slip op. at 3) (citation omitted).  "A priest is subject to the authority of the bishop of the diocese where he is incardinated . . . and may only be incardinated in one diocese at a time."  Ibid. (citation omitted).

employment at Hudson County BGC. The record does not indicate BGCA hired, trained, supervised, or had the authority to discipline or terminate Freudenberg's employment.

V.

Our Legislature has recognized the compelling need for sexual abuse victims to seek relief in our state courts to address the insidious effects of their ordeal. See N.J.S.A. 2A:14-2b(a) (permitting individuals to bring otherwise time-barred claims for sexual offenses committed against them as minors). Nevertheless, we must be mindful that there are due process restrictions to extend our courts' jurisdiction over individuals and entities that are allegedly liable for sexual abuse.

Here, there is no substantial, credible evidence in the record that supports a finding of specific personal jurisdiction over BGCA. Because no facts indicate BGCA purposely availed itself to an action related to Freudenberg's employment with Hudson County BGC, there is no support for plaintiffs' argument that BGCA would have reasonably expected to be a party to a New Jersey lawsuit involving his sexual abuse conduct. In parting with the trial court's determination, we make no judgment regarding the merits of plaintiffs' claims against BGCA beyond our jurisdiction. Our ruling, which is solely based on the

19

parties' jurisdictional discovery, is limited to whether New Jersey courts have specific personal jurisdiction over BGCA given plaintiffs' allegations. We conclude we do not.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION