NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1073-18T3

JOSEPH JARDIM,

      Plaintiff-Appellant,

v.

MICHAEL EDWARD OVERLEY,

      Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

November 14, 2019

APPELLATE DIVISION

Submitted October 21, 2019 - Decided  November 14, 2019

Before Judges Sabatino, Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2341-18.

Mackevich, Burke & Stanicki, attorneys for appellant (James E. Mackevich, on the brief).

Flaster/Greenberg PC, attorneys for respondent (Jeremy S. Cole, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

Retail transactions conducted over the Internet are becoming increasingly prevalent.  According to recent statistics from the United States Department of Commerce, buyers and sellers transacted approximately $146.2

billion in retail sales through the Internet during the first quarter of 2019.[1]

That represents over eleven percent of all retail sales in the United States, a

percentage share that has more than doubled since 2012.[2]

The present appeal calls for us to revisit the application of traditional

constitutional principles of personal jurisdiction and due process in the context

of a retail sale contract made over the Internet. The setting involves a

California seller of a vintage car to a New Jersey buyer.

After viewing an Internet posting that advertised the car for sale, the

New Jersey customer sent an e-mail to the California owner offering to buy it.

The seller responded with a counteroffer, and the parties swiftly agreed on a

price. The buyer arranged to have the purchased car shipped from California

to New Jersey. When the vehicle arrived here, the buyer discovered it was in

poor condition. He sued the seller in the Law Division. The seller moved to

dismiss the complaint for lack of in personam jurisdiction. The court granted

the motion, and the buyer now appeals.

We affirm the trial court's dismissal of the complaint for lack of personal

jurisdiction over the California seller. We agree the seller in this one-time-sale

---

[1]  U.S. Census Bureau, U.S. Dep't of Com., Quarterly Retail E-Commerce Sales 2nd Quarter (2019), https://www.census.gov/retail/mrts/www/data/pdf/ec_current.pdf.

[2]  Ibid.

A-1073-18T3

scenario did not "purposely avail" himself of this State's retail market to a degree that rises to the level of "minimum contacts" needed to support personal jurisdiction under the Due Process Clause.

The parties' follow-up communications that occurred after they agreed on the car's price were insufficient to create a jurisdictional nexus to New Jersey. In addition, their simple contractual documents lacked a forum selection clause, which could have specified New Jersey as an agreed-upon forum.

In reaching our conclusion on these facts, we do not foreclose a finding of specific jurisdiction in future Internet retail sale contexts in which more extensive transactional activities connected to this State occur.

## I.

The events bearing upon the jurisdictional issues are uncomplicated.

On May 2, 2018, defendant Michael Edward Overley placed a "listing" on the website of Hemmings.com[3] advertising for sale his 1960 Buick Invicta, a vintage automobile, "to whomever was willing to purchase it, wherever they may be." Overley is a lifelong resident of California. Overley did not focus the on-line listing to target purchasers from any specific states. The listing

---

[3] Hemmings.com is a website marketplace that features more than 20,000 searchable cars-for-sale ads. About Hemmings Motor News, Hemmings, https://www.hemmings.com/about-us/ (last updated May 25, 2018).

disclosed to would-be buyers that Overley and the Invicta were located in La Quinta, California.

According to his motion certification, Overley had not previously sold a car through the Hemmings website. He asserted he "[is] not in the business of selling cars or even conducting business through the Internet."

The advertisement for the Invicta, a convertible, sought to attract car collectors. The seller's description read as follows:

> Seller's Description: <u>This is probably the best example of a 1960 Buick Invicta convertible around</u>. It features the famous 401 nailhead engine with 325-hp and Buick's Twin Turbine automatic transmission. The car has power steering and power brakes. Floor it and you will be surprised at the torque this motor produces. The exhaust sound will take you back to your youth. Buick started the fins at the hood and ran them all the way along the car to diagonally mounted tailfins over round taillights. The fender skirts are a beautiful feature as well. The Tampico Red paint is stunning and new. This car really turns heads as it floats down the road. New convertible top fits well and new upholstery has no stains or tears. The white wall tires are new on original wheels and chrome hub caps. This car has many unusual features including an electric clock, adjustable tilt speedometer, speed alarm, and spotlight rear view mirrors. <u>A collector really can't go wrong with this Invicta</u>.
>
> [(Emphasis added).]

A-1073-18T3

The advertisement came to the attention of plaintiff Joseph Jardim. Jardim is in the used car business, with offices in Roselle, New Jersey. His state of residence is not disclosed in the record.

The e-mail contacts between the parties only spanned two days. On May 26, 2018, Mark Mannuzza, a business associate of Jardim, responded to Overley's advertisement. Through the use of his iPhone, Mannuzza first made an inquiry by e-mail into the car's availability:

Mannuzza: is the buick still available[4]

This initial e-mail disclosed that Mannuzza was from Linden, New Jersey, and that he had a "908" telephone area code.[5]

The next day, May 27, Overley responded:

Overley: Yes.

Shortly thereafter on that same day, Mannuzza replied, and prompted the following exchange:

Mannuzza: I'm a buyer for 38000 if that helps or if we
are close

---

[4]  We have left unaltered the grammar and punctuation of the parties' messages.

[5]  Pursuant to N.J.R.E. 201, we take judicial notice that the "908" area code is associated with a New Jersey telephone number, although we also take notice that people commonly retain telephone numbers these days for convenience even if they no longer live within that area code.

Overley: 40,000 and it's yours.
Mannuzza: Can you call me 908 [rest of phone number deleted]

According to Overley, he spoke to Mannuzza on the phone "shortly thereafter" this e-mail exchange. The parties "reached an agreement pursuant to which, in exchange for the Invicta, [Mannuzza] and/or Jardim would pay [Overley] $40,000 and arrange to have the car transported from California to New Jersey."

In his own motion certification, Jardim recounted that he personally spoke with Overley regarding the Invicta. Jardim recalled in particular "that [they] discussed the fact that the Invicta had a particular version of a variable speed transmission." According to Jardim, throughout their discussion, Overley "continued to give [Jardim] the distinct impression that [Jardim] was buying a pristine car, a car that a collector would be happy to purchase."

Jardim stated he made it clear to Overley that he was in the used car business, and it was his intent to resell the Invicta. According to Jardim, he told Overley he "would be arranging for financing through a New Jersey bank[6] and that [Overley] would have to work with the bank to make sure that the title and the lien in favor of the bank would be properly done."

---

[6] It appears the lender ultimately was a credit union.

In his separate motion certification, Mannuzza stated that Overley "spoke to Scott Roberts at the First Atlantic Credit Union," and told Roberts the Invicta was in "pristine condition."

On May 27, Jardim sent Overley a $500 deposit through Paypal.com. Two days later, on May 29, Jardim and Overley each signed a Bill of Sale, setting forth in minimal detail the terms of their agreement. The bare-bones Bill of Sale appears to be a generic standard form used for car sales, which the parties completed in handwriting, providing a few details such as the car's VIN, its mileage, and the parties' respective addresses. As we have already noted, the Bill of Sale contained no forum selection clause.

Jardim arranged for financing of the purchase through a credit union located in New Jersey. Overley meanwhile, completed the title transfer paperwork in California and mailed it to the credit union. The credit union then mailed a cashier's check for the remaining balance of $39,500 to Overley.

According to Overley, Mannuzza arranged to have a shipping company based in Philadelphia, Pennsylvania, pick up the Invicta in California. The shipper picked up the car on June 20, 2018, and transported it to New Jersey, where it arrived on June 25, 2018. The shipper's Bill of Lading listed a California "origin" address for the seller, and a New Jersey "destination" address for the buyer. Overley asserted that his "only involvement with the

A-1073-18T3

transportation process was making the car available" in California to the shipper.

When the Invicta arrived in New Jersey, Jardim discovered it was not in the condition that Overley had advertised. Jardim instead found what he contends are a litany of problems with the vehicle. To address those problems, Jardim claims he expended significant labor and funds, estimated to exceed "tens of thousands of dollars."[7]

In July 2018, Jardim filed a civil action against Overley in the Law Division in Union County. The complaint asserted causes of action for breach of contractual warranty, unjust enrichment, common law fraud, and violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 to -210.

In lieu of an answer, Overley moved to dismiss the complaint for lack of in personam jurisdiction. Overley argued he had not engaged in sufficient commercial contacts within the State of New Jersey in this transaction to enable him to be sued here.

After considering the certifications filed by both sides and hearing oral argument, the motion judge granted defendant's motion and dismissed the complaint for lack of jurisdiction. In his six-page written decision, the judge

_____

[7] Because we are only addressing jurisdictional issues, we make no findings or comments about the merit of Jardim's allegations.

8

discussed and applied New Jersey case law on personal jurisdiction, including the two cases principally relied upon by plaintiff: Lebel v. Everglades Marina, Inc., 115 N.J. 317 (1989), and Halak v. Scovill, 296 N.J. Super. 363 (App. Div. 1997).

The judge summarized his jurisdictional analysis with these particular salient observations:

> There is no dispute that Overley is not in the business of selling vehicles. There is no evidence in the record that there was a prior relationship or ongoing relationship between the parties outside of the sale of the vehicle. This Court finds that Jardim initiated contact by responding to Overley's internet posting, and although they negotiated the price of the vehicle, this Court finds those negotiations do not create sufficient minimum contacts with New Jersey to attach personal jurisdiction to Overley.

Jardim appeals this ruling. He argues the trial court misapplied the governing jurisdictional principles and underestimated the significance of the facts tying this Internet transaction to New Jersey. He further contends that Overley's profit-seeking interactions with both a New Jersey customer and the New Jersey lender that financed the car purchase comprise more than sufficient "minimum contacts" to confer jurisdiction in this State.

We review these legal arguments concerning the sufficiency of the jurisdictional contacts de novo. See, e.g., Mastondrea v. Occidental Hotels Mgmt., 391 N.J. Super. 261, 268 (App. Div. 2007). We do so mindful that a

9                                                      A-1073-18T3

plaintiff bears the burden of showing sufficient facts to establish jurisdiction. Blakey v. Cont'l Airlines, Inc., 164 N.J. 38, 71 (2000).

II.

A.

Long before the Internet was invented, the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment limits the personal jurisdiction of state courts over nonresident civil defendants. Pennoyer v. Neff, 95 U.S. 714, 733 (1878). In its seminal 1945 opinion in International Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945), the Court instructed that a nonresident defendant must have certain "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

The "primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum state." Bristol-Myers Squibb Co. v. Superior Court of California, ___ U.S. ___, ___, 137 S. Ct. 1773, 1779 (2017). Analytically, the Court has recognized two types of jurisdiction: "general (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Id., ___ U.S. at ___, 137 S. Ct. at 1780 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

There is no contention here that defendant Overley, a California resident, is amenable to general jurisdiction in the courts of New Jersey. Instead, we must examine whether Overley's involvement as a seller in this particular car transaction creates specific jurisdiction over him in this State.

In order for a state court to exercise jurisdiction over a nonresident defendant, the lawsuit "must aris[e] out of or relat[e] to the defendant's contacts with the forum." Daimler AG v. Bauman, 571 U.S. 117, 127 (2014). There must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State . . . ." Goodyear, 564 U.S. at 919.

When evaluating whether there is a sufficient jurisdictional nexus between the nonresident defendant and the forum state, courts must consider whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," or "purposefully directed" its conduct into a forum State. Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty., 480 U.S. 102, 110 (1987).

In addition to such purposeful availment or conduct by the defendant, the plaintiff's claim must "arise out of or relate to" the defendant's forum-

related activities. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

Lastly, the exercise of jurisdiction must be reasonable under the circumstances by comporting with notions of "fair play and substantial justice." Asahi Metal Industry Co., 480 U.S. at 113-14; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1988).

The Court has applied these well-established principles in the context of the sale of goods or products. For example, in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980), the Court ruled a defendant car dealership that sold an automobile in New York to New York residents lacked minimum contacts to be sued in Oklahoma after the car purchaser had an accident in that distant state. In that same vein, the Court held in Asahi Metal Industry that a Japanese manufacturer of tire valve stems had not purposefully availed itself of sufficient contacts with California, even though its valve stems were incorporated into tire assemblies that were eventually sold in that state. 480 U.S. at 112.

More recently, in Bristol-Myers Squibb, the Court determined that the California state courts lacked in personam jurisdiction over a prescription drug manufacturer in the case, even though the company reaped over $900 million in sales within California. Among other things, the Court found it significant

that nonresident plaintiffs in that case had not obtained the drug from a California source and had not been injured in that state, and the company had not developed, created a marketing strategy for, manufactured, labeled, packaged, or worked on the regulatory approval for the drug in California. ___ U.S. at ___, 137 S. Ct. at 1778-82.

We have adhered to these overarching jurisdictional principles in New Jersey case law. In applying those principles, our courts have adopted an approach to exercise jurisdiction over nonresident defendants "to the uttermost limits permitted by the United States Constitution." Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971); see also R. 4:4-4. We have also acknowledged the fact-specific nature of the jurisdictional assessment, which must be conducted on "a case-by-case basis." Bayway Ref. Co. v. State Util., Inc., 333 N.J. Super. 420, 429 (App. Div. 2000).

Following the guidance of the United States Supreme Court, case law on personal jurisdiction in New Jersey has focused upon whether the contacts in question "resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Lebel, 115 N.J. at 323. To determine if the defendant's contacts with New Jersey are sufficiently purposeful, we must examine the defendant's "'conduct and connection'" with this state, and assess whether the defendant should "reasonably anticipate being haled into court"

13                                                                                      A-1073-18T3

here. Bayway Refining, 333 N.J. Super. at 429 (citing World-Wide Volkswagen, 444 U.S. at 297). The existence of minimum contacts fundamentally turns upon whether the defendant engaged in "intentional acts . . . to avail itself of some benefit [in the] forum state." Waste Mgmt. v. Admiral Ins. Co., 138 N.J. 106, 126 (1994).

B.

We consider these constitutional principles in the important topical context before us: the sale of an item through the means of the Internet. To date the United States Supreme Court has declined to resolve whether a nonresident defendant's "virtual" presence within a state "via the Internet or other electronic means" can support a finding of personal jurisdiction in that forum. Walden v. Fiore, 571 U.S. 277, 290 n.9 (2014) (choosing to leave such "questions about virtual contacts for another day"). Nor has our state Supreme Court definitively addressed the issue.

Several federal and state courts around the country have grappled with the subject, with mixed approaches. See generally Richard E. Kaye, Annotation, Internet Web Site Activities of Nonresident Person Or Corporation As Conferring Personal Jurisdiction Under Long-Arm Statutes and Due Process Clause, 81 A.L.R.5th 41 (2000 & Supp. 2019) (canvassing the varied approaches and outcomes).

14

Some courts apply the "Zippo" sliding scale test devised by a federal district judge in Pennsylvania.  Under the Zippo approach, Internet usage is divided into three categories for purposes of determining whether personal jurisdiction exists over a nonresident defendant:

> [1]  At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper . . . .
>
> [2]  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction . . . .
>
> [3]  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.
>
> [Zippo Mfg. Co. v. Zippo Dot Com, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (alteration in original) (emphasis added).]

Some courts have adopted this three-category, sliding-scale approach of Zippo.  See, e.g., Monkton Ins. Services, Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014) ("[w]e have used the Zippo sliding scale when a plaintiff argues that

15

personal jurisdiction exists due to a defendant's website.") (citing Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002)); Johnson v. Arden, 614 F.3d 785, 796 (8th Cir. 2010) ("[w]hen considering the sufficiency of internet contacts under a specific jurisdiction analysis, we have found the Zippo test instructive."); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997) (applying the Zippo standards, and noting "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.") (quoting Zippo, 952 F. Supp. at 1124).

Other courts have eschewed the Zippo approach, and, instead, analyze whether the Internet is a basis for personal jurisdiction under the same conceptual framework as any non-Internet case. See, e.g., Best Van Lines, Inc. v. Walker, 490 F.3d 239, 252 (2d Cir. 2007) (noting "[w]hile analyzing a defendant's conduct under the Zippo sliding scale of interactivity may help frame the jurisdictional inquiry in some cases . . . it does not amount to a separate framework for analyzing internet-based jurisdiction." Instead, "traditional statutory and constitutional principles remain the touchstone of the inquiry.") (citation omitted); Jennings v. AC Hydraulic A/S, 383 F.3d 546, 550 (7th Cir. 2004) ("Premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant

and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country."); Kindig It Design, Inc. v. Creative Controls, Inc., 157 F. Supp. 3d 1167, 1173-74 (D. Utah 2016) ("this court finds Zippo to be unpersuasive. The traditional tests for personal jurisdiction are readily applicable to internet-based conduct and are therefore controlling under Federal Circuit law.").

Case law from other jurisdictions involving the interactive website "eBay" is instructive. The Hemmings website for vintage cars the parties used in the present case is similar to the "eBay" website. Several jurisdictional opinions involving eBay transactions have focused upon the regularity to which the seller has used the eBay site to conduct business in a particular forum. See, e.g., Boschetto v. Hansing, 539 F.3d 1011, 1018-19 (9th Cir. 2008) (declining to exercise personal jurisdiction over a nonresident defendant based on a single eBay sale of a car, and observing that "the cases that have found that jurisdiction was proper based on eBay sales relied heavily on the fact that the defendant was using the platform as a broader vehicle for commercial activity.") (emphasis added); see also Dedvukaj v. Maloney, 447 F. Supp. 2d 813, 822-23 (E.D. Mich. 2006) (finding personal jurisdiction present when "it [was] clear from the record that Defendants' use of eBay [was] regular and systemic.") (emphasis added); Machulsky v. Hall, 210 F.

17

Supp. 2d 531, 541 (D.N.J. 2002) ("Although eBay is an interactive web site which allows users to engage in commercial transactions and exchange information with others via its host server, [a buyer's] single purchase from [a seller] through eBay does not constitute the requisite 'purposeful availment of doing business' within New Jersey . . . .") (emphasis added).

No recent published New Jersey opinions have addressed these jurisdictional issues implicated by retail sales over the Internet. The two main cases relied upon by plaintiff, which were discussed in the motion judge's written opinion, were decided over twenty years ago, and neither of them involved an Internet transaction.

In Lebel, 115 N.J. at 317, the New Jersey Supreme Court found personal jurisdiction existed over a nonresident Florida defendant, in a situation where defendant sold a boat to a New Jersey buyer. Id. at 324. The buyer met a representative of the seller at a trade show in New York. Id. at 320. Thereafter, over the next two years, the buyer received phone calls in New Jersey "on at least twenty occasions" from defendant, attempting to solicit business. Ibid. The Court concluded that these multiple and sustained purposeful contacts sufficed to create personal jurisdiction in this State. Id. at 327.

18

The motion judge here correctly distinguished <u>Lebel</u> from the limited contacts that occurred in the present case, in which the defendant seller and the New Jersey buyer had only a few e-mail exchanges and phone calls over the course of several days in order to consummate a one-time transaction for a solitary car. Unlike in <u>Lebel</u>, the seller did not engage in persisting attempts over a long period of time to induce plaintiff to make the purchase. Defendant never met the buyer in person, at a trade show or otherwise. The present case is far down the spectrum of "availment" from <u>Lebel</u>. To be sure, Overley was aware Jardim and his colleague Mannuzza were located in New Jersey. But it was the buyer, not the seller, who undertook the arrangements to have the car picked up in California and delivered here. The seller's role, once the price had been agreed upon, was comparatively passive.

The motion judge also correctly found the present case dissimilar to the factual scenario in <u>Halak</u>, 296 N.J. Super. at 363. In <u>Halak</u> this court exercised jurisdiction over a Maryland defendant when a New Jersey resident chartered a boat from Maryland to New Jersey. The defendant had sent the parties' contract to plaintiff's New Jersey address. Notably, the plaintiff in <u>Halak</u> had chartered a boat from the defendant the previous year. <u>Id.</u> at 369. Moreover, the defendant in <u>Halak</u> continued to take actions against the New Jersey plaintiff after the charter was consummated, by pursuing a criminal complaint

19

against the plaintiff, obtaining an arrest warrant, and making disparaging statements about plaintiff to others in the business. Ibid. The motion judge in the present case rightly deemed the continuing course of conduct in Halak to be dissimilar to the one-time sale at issue here.

The only published opinion in this State, which was not cited by the parties or the trial court, addressing jurisdiction arising from an Internet transaction is the Law Division's decision in Ragonese v. Rosenfeld, 318 N.J. Super. 63 (Law Div. 1998), another case decided more than two decades ago. In that case, the plaintiff purchased an airline ticket from a foreign airline, which was meant to be delivered to her at the boarding gate of JFK International Airport in New York. Id. at 65. The airline ticket never arrived. The plaintiff sued the airline for, among other things, breach of contract. Id. at 65-66. Despite the fact that the airline operated its own web page that was accessible in New Jersey, the Law Division granted the airline's motion to dismiss for lack of personal jurisdiction. Id. at 71.

As the Ragonese court reasoned, "there was no direct solicitation for services to New Jersey residences . . . [t]here was no information aimed specifically at New Jersey or its residents nor any interactive site to book airline tickets in the United States." Ibid. Classifying the website as a

20 A-1073-18T3

"passive web page," the court concluded that the website did not reflect that the airline "purposefully availed" itself of a New Jersey forum. Ibid.

Even more to the point, the facts before us are strikingly similar to those presented to the Ninth Circuit Court of Appeals in Boschetto, 439 F.3d at 1011. The seller in Boschetto, a resident of Wisconsin, posted a listing on eBay.com that advertised an antique car. Id. at 1014. Thereafter, the buyer and seller communicated via e-mail to arrange for the delivery of the vehicle from Wisconsin to California. Ibid. The buyer hired a transport company to pick up the car in Wisconsin, and bring it to California. Ibid. Upon delivery, the buyer discovered that the car was not the model that was advertised, along with a host of other problems. Id. at 1015. The buyer filed a breach of contract action against the seller in the federal district court in California. The district court dismissed the case for lack of personal jurisdiction. Ibid. The Ninth Circuit affirmed that result, observing:

> The arrangement between [the seller] and [the buyer] which is, at bottom, a contract for the sale of a good, is insufficient to have created a substantial connection with California. [The seller] . . . did not create any ongoing obligations with [the buyer] in California; once the car was sold the parties were to go their separate ways . . . . Nor did performance of the contract require the Defendants to engage in any substantial business in California . . . . This was, as the district court observed, a 'one-shot affair.'
>
> [Id. at 1017.]

Similarly, in the present case we have before us a "one-shot affair" in which a nonresident car owner used a general website marketplace to advertise the vehicle, accepted an offer from a buyer located in another state, and had the buyer arrange for the purchased car to be shipped to his destination. Under such circumstances we do not believe defendant Overley would reasonably anticipate he was submitting himself to the jurisdiction of a state court on the other side of the country if the buyer was dissatisfied.

We stress this was a "one-time" transaction in three respects. First, accepting defendant's certification as true, he never used the Hemmings website before. Second, he is not in the business of selling cars. Third, the parties had not previously done business with one another.

We are cognizant that Overley must have been aware he was dealing with a New Jersey buyer. But mere awareness of the other party's domicile is not the equivalent of purposeful availment. Overley did not target New Jersey customers. He presumably would have been willing to sell the Invicta to a collector in any state for an acceptable price.

Perhaps there may come a day in which Internet transactions become so dominant that buyers and sellers should be expected to anticipate, in the absence of an express forum selection clause, that they could be sued in the other contracting party's home state without limitation. Or perhaps

 A-1073-18T3

technological innovations will make the "courtroom of the future" a forum in which certain kinds of civil litigation can be adjudicated remotely without the necessity of the parties and witnesses appearing in person, thereby minimizing the practical burdens of being sued in another forum state. That day has not arrived and it is unclear what the future will actually bring.

For the present, we are satisfied that the motion judge in this case fairly and correctly determined that the California seller's activities in this one-time transaction did not comprise "purposeful availment" sufficient to confer personal jurisdiction over him in our state court. In sustaining that conclusion, we need not opine in the abstract on whether the "Zippo" test, or some other formulation, is the ideal analytic approach for our courts to use in Internet sale cases.

The denial of jurisdiction on the facts of this case was soundly reasoned. We therefore affirm it, with one slight modification, to change the dismissal "with prejudice" to one "without prejudice," and thus enable plaintiff an opportunity to bring a timely suit against defendant in California if he so chooses. See Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 415-16 (1991).

Affirmed, as modified.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23                                                                      A-1073-18T3