NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2800-15T3

FDASMART, INC.,

    Plaintiff-Respondent,

v.

DISHMAN PHARMACEUTICALS AND
CHEMICALS LIMITED and DISHMAN
USA, INC.,

    Defendants-Appellants.

_____

```
┌─────────────────────────────┐
│   APPROVED FOR PUBLICATION   │
│                             │
│     December 29, 2016        │
│                             │
│      APPELLATE DIVISION      │
└─────────────────────────────┘
```

Argued November 28, 2016 — Decided December 29, 2016

Before Judges Nugent, Haas, and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7832-13.

Kim M. Watterson (Reed Smith LLP) of the Pennsylvania bar, admitted pro hac vice, argued the cause for appellants (Reed Smith LLP, attorneys; Daniel Mateo and Amy McVeigh, on the briefs).

James D. Young argued the cause for respondent (Fox Rothschild LLP, attorneys; Mr. Young and Steven J. Daroci, on the brief).

The opinion of the court was delivered by

CURRIER, J.A.D.

In this contract action, we must determine whether personal jurisdiction was properly found, thus permitting the suit against defendants to proceed in New Jersey. Because we find that New Jersey does not have either specific or general jurisdiction over defendant Dishman Pharmaceuticals and Chemicals, LTD (DPCL), we reverse the grant of summary judgment. We affirm the trial judge's finding that plaintiff FDASmart, Inc. has stated a viable claim against defendant Dishman USA, Inc., and therefore, remand for further proceedings.

DPCL, an Indian corporation with its principal place of business in Ahmedabad, Gujarat State, India, manufactures active ingredients used to make pharmaceutical products. Dishman USA, a New Jersey corporation, is a wholly owned subsidiary of DPCL and has its principal place of business in Middlesex, New Jersey. Jason Bertola is the head of Dishman USA and is responsible for its day-to-day operations. Plaintiff is a Delaware corporation with its principal place of business in Amawalk, New York.

In 2013, PKM, an Indian company in the business of advising clients on mergers and acquisitions, contacted plaintiff about discussing with DPCL the potential sale of a pharmaceutical manufacturing facility owned by DPCL's Chinese subsidiary in China. The three companies met in India and subsequently

entered into a Memorandum of Understanding (MOU). Plaintiff and PKM were identified in the MOU as the "consulting party"; DPCL would pay fees to the consulting party for the development of a sales strategy, for any prospective buyers who visited the plant, and ultimately, a success fee for the completed purchase.

Although the first two drafts of the MOU named DPCL as the contracting party, the final draft listed <u>Dishman Group</u>[1] as the signatory, with DPCL's address. Janmejay Vyas, managing director of DPCL, signed the document. The MOU was to be "governed by and construed in accordance with laws of India." A non-disclosure agreement was to be signed in India; fees were to be paid "with applicable Indian taxes." The invoices that were subsequently submitted under the MOU were sent to DPCL in India; payments on the invoices were made by DPCL.

After a dispute arose concerning sales efforts, DPCL decided not to sell its Chinese facility. Plaintiff presented a final invoice to DPCL at its Indian address and declared its intent to bring legal action in India. Thereafter, plaintiff

---

[1] Dishman Group is a marketing term that refers to DPCL and its subsidiaries; it is not a legal entity.

A-2800-15T3

filed suit against DPCL and Dishman USA in New Jersey, alleging breach of contract and related claims.[2]

In lieu of filing an answer, defendants moved for a dismissal of the action, asserting a lack of personal jurisdiction, forum non conveniens, a failure to state a claim against Dishman USA, and a failure to join PKM as a necessary party. The trial judge denied the motion without prejudice, and permitted the parties to engage in limited jurisdictional discovery.

After the completion of discovery, plaintiff moved for partial summary judgment on the jurisdictional issue; defendants opposed the motion and renewed their application for dismissal. Following oral argument, the judge granted plaintiff's partial summary judgment motion, finding that (1) New Jersey had general jurisdiction over defendant and was an appropriate forum; (2) plaintiff had stated a claim against Dishman USA; and (3) PKM was not an indispensable party.

On appeal, defendants argue that (1) DPCL is not subject to personal jurisdiction in New Jersey because general jurisdiction does not exist under an alter ego theory; (2) Dishman USA should be dismissed because a claim upon which relief can be granted

---

[2] PKM has filed a similar suit for breach of contract against plaintiff and defendant in India.

has not been stated; (3) the case should be dismissed under forum non conveniens because the relevant dealings leading up to the creation of the contract occurred in India; and (4) the case should be dismissed because an indispensable party to the original contract — PKM - is not present in the instant litigation.

We review a grant of summary judgment under the same standard as the motion judge. Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012). We must determine whether there are any genuine issues of material fact when the evidence is viewed in the light most favorable to the non-moving party. Id. at 38, 41. "[T]he legal conclusions undergirding the summary judgment motion itself [are reviewed] on a plenary de novo basis." Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 385 (2010).

After reviewing the record in light of the contentions advanced on appeal, and the applicable legal principles, we are constrained to reverse the trial judge's jurisdictional ruling.

To establish personal jurisdiction over a non-resident defendant in conformance with due process, our courts follow the two-part test developed in Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102 (1945). Under this test:

[d]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

[Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322 (1989) (quoting Int'l Shoe, supra, 326 U.S. at 316, 66 S. Ct. at 158, 90 L. Ed. at 102).]

Applying this test in a particular case requires a two-step analysis.

The first part of the test, "minimum contacts," focuses on "'the relationship among the defendant, the forum, and the litigation,'" id. at 323 (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S. Ct. 2569, 2579, 53 L. Ed. 2d 683, 698 (1977)), requiring "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws.'" Waste Mgmt. Inc. v. Admiral Ins. Co., 138 N.J. 106, 120 (1994) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283, 1298 (1958)), cert. denied, 513 U.S. 1183, 115 S. Ct. 1175, 130 L. Ed. 2d 1128 (1995).

Under this step a court must distinguish between specific and general jurisdiction. The trial judge found that "the nature and extent of [the] business relationship [between

plaintiff and DPCL was] insufficient to establish specific jurisdiction." We agree and therefore only address the issue of general jurisdiction.

General jurisdiction is based on the defendant's continuous and systematic activities in the forum. Lebel, supra, 115 N.J. at 323. Defendant's activities must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, ___ U.S. ___, ___, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624, 633 (2014) (quoting Goodyear Dunlop Tires Operations, S. A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796, 803 (2011)). Typically, a corporation's principal place of business and place of incorporation establishes where the corporation is "at home" and subject to general jurisdiction. See Goodyear, 564 U.S. at 924, 131 S. Ct. at 2853-54, 180 L. Ed. 2d at 806. The standard for establishing general jurisdiction "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Mische v. Bracey's Supermarket, 420 N.J. Super. 487, 492 (App. Div. 2011).

Once a court determines that a defendant's activities establish minimum contacts with the forum, the court must then inquire whether "fair play and substantial justice" support an exercise of jurisdiction. This determination requires

evaluation of factors such as "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Lebel, supra, 115 N.J. at 328 (quoting Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113, 107 S. Ct. 1026, 1034, 94 L. Ed. 2d 92, 105 (1987)). In addition, the court must consider "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." Asahi, supra, 480 U.S. at 113, 107 S. Ct. at 1033, 94 L. Ed. 2d at 105 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490, 498 (1980)).

In beginning our review, it is undisputed that DPCL is not "at home" in New Jersey; it is not incorporated in this state nor is New Jersey its principal place of business. See Daimler, supra, ___ U.S. at ___, 134 S. Ct. at 754, 187 L. Ed. at 633. Therefore, plaintiff must show that defendant had continuous and systematic contacts with New Jersey so as to justify it being haled into New Jersey's courts.

Plaintiff persuaded the motion judge that the activities of Dishman USA in New Jersey should be attributed to its parent DPCL for jurisdictional purposes under an alter ego theory. We disagree.

We have held that the "forum contacts of a subsidiary corporation will not be imputed to a parent corporation for jurisdictional purposes without a showing of something more than mere ownership." Pfundstein v. Omnicom Grp. Inc., 285 N.J. Super. 245, 252 (App. Div. 1995). The alter ego theory is based on the doctrine of piercing the corporate veil. To pierce the corporate veil of a parent corporation, a party must establish two elements: (1) the subsidiary was dominated by the parent corporation, and (2) adherence to the fiction of separate corporate existence would perpetrate a fraud or injustice, or otherwise circumvent the law. State, Dept. of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500-01 (1983). To determine whether the first element has been satisfied, courts consider whether "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent." Ibid.

In considering the level of dominance exercised by the parent over the subsidiary, the court will consider factors such as "common ownership, financial dependency, interference with a subsidiary's selection of personnel, disregard of corporate formalities, and control over a subsidiary's marketing and operational policies." Pfundstein, supra, 285 N.J. Super. at 253-54.

In analyzing the Pfundstein factors, we are satisfied that there is insufficient evidence presented to pierce the corporate veil and impute Dishman USA's New Jersey contacts to DPCL. In addressing the first factor, although there may be commonality of ownership between the parent and subsidiary, we have held that dominance "cannot be established by overlapping boards of directors." Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 201 (App. Div. 2006).

Plaintiff argues that Dishman USA is "totally dependent" on DPCL and therefore meets the second criteria. Although a Dishman representative testified that the company barely meets its expenses, the statement was made as an explanation as to why it does not pay out dividends. Its ability to meet its expenses confirms that Dishman USA is not financially dependent on its parent and does not rely on DPCL to pay its salaries and expenses.

The record does not contain any facts to satisfy the third factor under which plaintiff must show that DPCL directly interfered with Dishman USA's selection of its personnel. As to the fourth factor, it is undisputed that the parent and subsidiary are distinct equal entities that engage in arms-length transactions in accordance with applicable tax laws.

Finally, there are no proofs presented that DPCL controls its subsidiary's marketing and operational policies.

We are satisfied that plaintiff is unable to meet its burden of proving DPCL's dominance of its subsidiary in order to pierce the corporate veil. As a result, we need not reach the second requirement for satisfying the doctrine of piercing the corporate veil, which requires proofs of fraud concerning the creation of the subsidiary. As we have stated, "[w]here individuals set up 'legitimate business structures to further their personal and business plans' and 'do not use their partnerships to commit fraud or defeat the ends of justice,' the veil-piercing doctrine will not apply." Canter v. Lakewood of Voorhees, 420 N.J. Super. 508, 522 (App. Div. 2011) (quoting Shotmeyer v. N.J. Realty Title Ins. Co., 195 N.J. 72, 87 (2008)). Plaintiff has failed to present any such proofs.

We conclude that the trial judge erred in finding that Dishman USA was essentially the same or the alter ego of DPCL in order to assert general jurisdiction in New Jersey.

We also are unpersuaded by plaintiff's argument and disagree with the trial judge's ruling that in personam jurisdiction exists as a result of personal service of process upon an employee of DPCL when he came to New Jersey for the purpose of attending his deposition for this litigation. The

judge erred in relying upon Rule 4:4-4(a)(6) as equating personal service of process with securing long-arm jurisdiction over DPCL. As noted in the comments to the Rule, Pressler & Verniero, Current N.J. Court Rules, comment 1 on Rule 4:4-4(a)(6), the various modes of service (a) "cannot be read as mechanisms for obtaining long-arm jurisdiction unless the underlying predicate of long-arm jurisdiction, adequate contact with the State, exists." See Citibank v. Estate of Simpson, 290 N.J. Super. 519, 529-30 (App. Div. 1996) (stating "a foreign corporation . . . would not be subject to this State's in personam jurisdiction merely because a person authorized to receive service on its behalf happened to be present in this State and was personally served here"). The service on DPCL's employee was insufficient to create personal jurisdiction.[3]

In addressing Dishman USA's contention on appeal that the complaint against it should have been dismissed for a failure to state a claim, we are satisfied that the trial judge provided sufficient reasoning in his denial of the Rule 4:6-2 motion. The judge properly viewed all inferences in plaintiff's favor and found that DPCL's managing director's signature on the MOU for the contracting party Dishman Group was sufficient to glean

---

[3] In light of our conclusions, we need not discuss the issues of forum non conveniens, nor whether PKM is an indispensable party.

an intent to bind all of DPCL's subsidiaries including Dishman USA.

We therefore reverse the grant of summary judgment to plaintiff and the denial of summary judgment to DPCL. We affirm the denial of Dishman USA's motion for dismissal and remand for further proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13                                                                    A-2800-15T3