**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2519-23

DAKOTA OIL PROCESSING,
LLC,

     Plaintiff-Respondent,

v.

JEFFRY L. HARDIN, ESQ.,
and LOCKE LORD, LLP,

     Defendants-Appellants.

_____

Argued October 9, 2024 – Decided April 16, 2025

Before Judges Mayer and DeAlmeida.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2411-22.

John D. Haggerty argued the cause for appellants (Gibbons PC, attorneys; John D. Haggerty, on the briefs).

Wendy M. Crowther argued the cause for respondent (Law Office of Wendy M. Crowther, and Kenneth D. Albert (Cohn & Associates) of the Pennsylvania bar, admitted pro hac vice, attorneys; Wendy M. Crowther,

of counsel and on the brief; Kenneth D. Albert, on the brief).

PER CURIAM

On leave granted, defendants Jeffry L. Hardin, Esq. and Locke Lord, LLP (Locke Lord) appeal from the March 14, 2024 order of the Law Division denying their motion to dismiss this legal malpractice action for lack of personal jurisdiction. We reverse and remand for the trial court to enter an order dismissing with prejudice the claims against defendants.

I.

Plaintiff Dakota Oil Processing, LLC (Dakota) is a North Dakota limited liability company (LLC) formed for the purpose of developing and operating a crude oil topping refinery in North Dakota. According to annual reports Dakota filed with the North Dakota Secretary of State, Dakota's headquarters and principal executive office from 2016 to 2018 was in North Dakota. During that time, Dakota also maintained a mailing address in New Jersey, where its Chief Financial Officer, Tristram Collins, resides, but Dakota was not registered to do business in this State. Although Dakota claims its principle place of business was in New Jersey, from 2016 to 2018 Dakota was registered to do business only in North Dakota.

A-2519-23

Dakota is managed by Starboard Tack Capital, LLC (Starboard), a New Jersey LLC of which Collins is a partner. Dakota shares a New Jersey mailing address with Starboard.

In early 2016, Dakota engaged SRW Ventures, LLC to obtain financing for the North Dakota refinery project through Cal & Schwartz (C&S), a venture financing firm incorporated in Bermuda. Pursuant to a loan transaction with C&S, Dakota agreed to deposit into escrow $2.5 million to be released from escrow and paid to C&S only after the parties satisfied the conditions in the escrow agreement. Dakota and C&S originally agreed that Emile Barton, a New York-based attorney, would act as escrow agent. On or about August 18, 2016, however, C&S informed Dakota that it required Christopher G. Hayes, a Pennsylvania attorney, to replace Barton as escrow agent.

On or about August 25, 2016, Dakota retained Hardin, who is licensed to practice law in the District of Columbia, to represent Dakota in connection with the escrow arrangement with Hayes. Hardin is a Virgina resident and "Of Counsel" at Locke Lord, a Delaware limited liability partnership (LLP) with its principle place of business in Texas. Dakota, through its corporate officers, had known Hardin for years. In 2009, Harden sent his resume to Starboard in New Jersey offering his legal services. Locke Lord's engagement letter was sent to

Dakota at its New Jersey mailing address. Hardin worked exclusively at Locke Lord's Washington, D.C. office during his representation of Dakota and never traveled to New Jersey in connection with the representation.

In addition to its Texas headquarters, Locke Lord has offices in eighteen locations in the United States, including an office it leases in Newark. Locke Lord has no attorneys who use the Newark office as their primary office location. The firm, which maintains a New Jersey Interest on Lawyers' Trust Account (IOLTA account), has thirty-one attorneys admitted to practice law in New Jersey and paid both income and payroll taxes to New Jersey from 2009 to the present. Total annual Locke Lord revenue attributable to New Jersey over the past ten years ranged from 0.0119% to 4.6046%. In 2016, Locke Lord had twenty-seven clients with New Jersey addresses. In addition, the firm sponsored New Jersey bar events and its attorneys received in-state New Jersey professional honors.

No Locke Lord attorney licensed to practice law in New Jersey ever consulted on, billed for, or did any work in connection with the firm's representation of Dakota. Similarly, neither Hardin nor any other Locke Lord attorney did any work in connection with the representation of Dakota that involved issues of New Jersey law.

On or about September 13, 2016, Dakota, C&S, and Hayes executed an escrow agreement in connection with the loan. Pursuant to the escrow agreement, Hayes was obligated to hold $2.5 million deposited by Dakota in an escrow account pending email confirmation from Dakota's bank that it had received initial funding under the loan of no less than $5 million, at which time Hayes would release the escrowed $2.5 million to C&S.

Between September 14 and September 29, 2016, Hardin, Hayes, and Dakota communicated via email and phone regarding the escrow agreement and the process to validate the email confirmation from Dakota's bank that Hayes required before releasing the $2.5 million to C&S. By email to Dakota dated September 14, 2016, Hardin warned that the "key with using Chris Hayes is to be certain that he cannot be duped into prematur[e]ly releasing your money. You need to be certain that only a legitimate email (or maybe an old school fax?), and maybe followed by a confirmatory call with your banker, will result in the release. Nothing wrong with being paranoid about losing [$]2.5 million."

On September 18, 2016, Hardin emailed Hayes proposing an authentication process whereby Dakota's bank would send an email to Hayes when it had received the initial funding, and would include a phone number and contact person at the bank for Hayes to call to confirm that the funds were in

5

fact received by the bank before Hayes would release the escrow payment to C&S.

On or about September 30, 2016, Dakota funded the escrow account by depositing $2.5 million into Hayes's Pennsylvania IOLTA account.  According to Hardin, prior to this time, Dakota had directed him to "stand down" and cease any discussions with Hayes and any work on the escrow agreement because Hardin "was raising too many questions about the nature of the escrow, the escrow agreement and the transaction itself."  Defendants, however, continued to invoice Dakota for legal services provided through November 2016.

On or about November 3, 2016, Hardin discovered Hayes had released the $2.5 million escrow payment to C&S without the required confirmation from Dakota's bank that Dakota received funding under the loan.  Dakota never received any funding under the loan with C&S.

On October 5, 2018, Dakota filed an action against Hayes, Hardin, and Locke Lord alleging professional malpractice in the United States District Court for the Eastern District of Pennsylvania.  On October 9, 2018, the District Court ordered Dakota to show cause why the federal action should not be dismissed for lack of subject matter jurisdiction or, alternatively, transferred to another venue.  One week later, Dakota voluntarily dismissed that action.

A-2519-23

On October 15, 2018, Dakota filed a professional malpractice action against Hayes, Hardin, and Locke Lord in the Court of Common Pleas in Chester County, Pennsylvania. In response to Hardin's and Locke Lord's jurisdictional challenges, Dakota argued that "every action relevant to this dispute took place in Pennsylvania." On April 16, 2020, the Chester County court dismissed the action with prejudice against Hardin and Locke Lord for lack of personal jurisdiction. Hayes and Dakota eventually settled the Chester County matter proceeded against.

On September 8, 2022, Dakota filed a first amended complaint (FAC) in the New Jersey Superior Court, Law Division against Hardin and Locke Lord alleging one count of professional malpractice. At that time, Dakota was not registered to do business in New Jersey pursuant to N.J.S.A. 42:2C-65(a).

On October 25, 2022, Hardin and Locke Lord moved to dismiss the FAC for lack of personal jurisdiction. Defendants did not argue that Dakota lacked standing to maintain its claim because it was not registered to do business in New Jersey. While defendants' motion was pending, Dakota served the FAC on two Locke Lord partners at their residences in New Jersey. Neither of those partners had any involvement in the firm's representation of Dakota. Dakota

A-2519-23

also served the FAC on Locke Lord's designated agent for service of process in New Jersey.

On January 30, 2023, the trial court denied the motion to dismiss subject to renewal after jurisdictional discovery. On that date, the court entered two orders, one for each defendant, denying the motion.

Dakota subsequently moved to vacate aspects of the January 30, 2023 orders relating to jurisdictional discovery. On August 31, 2023, in response to the motion, defendants argued, for the first time, that Dakota lacked standing to maintain its claim because it was not registered to do business in New Jersey pursuant to N.J.S.A. 42:2C-65(a). On September 2, 2023, Dakota registered to do business in New Jersey.

After completing jurisdictional discovery, on January 5, 2014, defendants renewed their motion to dismiss the FAC for lack of personal jurisdiction and because Dakota lacked standing to maintain its claim because it was not registered to conduct business in New Jersey pursuant to N.J.S.A. 42:2C-65(a) when it filed the FAC. Dakota opposed the motion.

On March 13, 2024, the trial court denied defendants' motion and issued a written decision. The court concluded defendants were subject to general jurisdiction in New Jersey due to Locke Lord's maintenance of a physical office,

pervasive contacts, and purposeful availment of the privilege of conducting activities, including the practice of law, in this State, as well as its invocation of the benefits and protections of the laws of the State. The court also found significant Hardin and Locke Lord holding themselves out as capable of providing multi-jurisdictional services, which was of interest to Dakota when it retained defendants. In addition, the trial court found Hardin's continued contacts with Starboard and Collins while he was in New Jersey, and his having directed all communications and billings to Dakota's New Jersey mailing address, which the court found to be Dakota's principle place of business, demonstrated an ongoing relationship with a client in this State.

The judge further found specific jurisdiction over defendants for purposes of Dakota's malpractice claim, given the connections between defendants' representation of Dakota and New Jersey, as detailed above, and defendants' continuous contacts and physical presence in the State. The judge explained it would not offend traditional notions of fair play and substantial justice for the court to exercise personal jurisdiction over defendants. The court found that given their contacts with New Jersey, defendants should reasonably foresee being haled in a New Jersey court.

Additionally, the judge found Dakota obtained transient jurisdiction over defendants by serving the FAC on two Locke Lord partners while they were in this State, and by serving the partnership's registered agent in New Jersey.

Further, the judge concluded Dakota's registration to conduct business in New Jersey during the pendency of this action cured any statutory impediment created by N.J.S.A. 42:2C-65(a).

A March 14, 2024 order memorialized the trial court's decision.[1]

On April 19, 2024, we granted defendants' motion for leave to appeal the March 14, 2024 order. Defendants argue the trial court erred in concluding: (1) defendants are subject to general jurisdiction in New Jersey; (2) it has specific jurisdiction over defendants for purposes of Dakota's malpractice claim; (3) transient jurisdiction was obtained over defendants by service of the FAC on two Locke Lord partners at their homes in New Jersey and on the firm's registered agent for service in the State; (4) traditional notions of fair play and substantial justice would not be offended by its exercise of personal jurisdiction

---

[1] The trial court filed two identical orders dated March 13, 2024, denying defendants' motion to dismiss. One order was filed on March 13, 2024. The other was filed on March 14, 2024, and was accompanied by a written decision. For the sake of completeness, defendants sought leave to appeal both orders. In this opinion, we refer only to the order filed on March 14, 2024.

over defendants; and (5) Dakota was not barred from maintaining this suit by its failure to register to do business in New Jersey at the time it filed the FAC.

II.

Whether a court has personal jurisdiction over a defendant is a "'mixed question of law and fact' that must be resolved at the outset, 'before the matter may proceed . . . .'" Rippon v. Smigel, 449 N.J. Super. 344, 359 (App. Div. 2017) (quoting Citibank, N.A. v. Est. of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996)). We review a trial court's findings of fact with respect to jurisdiction "to determine if those findings are supported by substantial, credible evidence in the record," but conclusions of law are reviewed de novo. Id. at 358. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Whether the facts support a conclusion that the court has personal jurisdiction over a defendant is a question of law and is subject to de novo review. YA Glob. Invs., L.P. v. Cliff, 419 N.J. Super. 1, 8 (App. Div. 2011) (citing Mastondrea v. Occidental Hotels Mgmt., S.A., 391 N.J. Super. 261, 268 (App. Div. 2007)).

> Our state's "long-arm statute 'provides for jurisdiction coextensive with the due process requirements of the United States Constitution.'" Koch v. Pechota, 744 Fed. Appx. 105, 110 (3d Cir. 2018) (quoting Miller Yacht

11

Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004)). Rule 4:4-4(b)(1), our long-arm statute, "has been construed as vesting New Jersey's courts with jurisdiction over non-residents to the outer limits permitted by due process." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1.1 on R. 4:4-4 (2020). Accordingly, New Jersey state courts refer "to federal law to interpret the limits on personal jurisdiction." Koch, 744 Fed. Appx. at 110 (citing IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998)).

[Baskin v. P.C. Richard & Son, LLC, 462 N.J. Super. 594, 615 (App. Div. 2020), rev'd on other grounds, 246 N.J. 157 (2021).]

A two-part test governs the personal jurisdiction analysis for a non-resident defendant: (1) each non-resident defendant must "have certain minimum contacts with" New Jersey to establish jurisdiction; and (2) maintaining the suit against the non-resident defendant must "not offend 'traditional notions of fair play and substantial justice.'" Pullen v. Galloway, 461 N.J. Super. 587, 596-97 (App. Div. 2019) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). It is "well settled that the requisite quality and quantum of contacts is dependent on whether general or specific jurisdiction is asserted . . . ." Citibank, 290 N.J. Super. at 526.

As we have explained:

General jurisdiction [over a non-resident defendant] exists when the plaintiffs' claims arise out of the defendant's "continuous and systematic" contacts with

12

the forum state.  Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Baanyan Software Servs., Inc. v. Kuncha, 433 N.J. Super. 466, 474 (App. Div. 2013).  For general jurisdiction to attach, a defendant's activities must be "so continuous and systematic as to render [it] essentially at home in the forum State."  FDASmart, Inc. v. Dishman Pharm. & Chems., Ltd., 448 N.J. Super. 195, 202 (App. Div. 2016) (alteration in original) (citation omitted) (quoting Daimler AG v. Bauman, 571 U.S. 117, 128 (2014)).

Specific jurisdiction is available when the "cause of action arises directly out of defendant's contacts with the forum state . . . ."  Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994), cert. denied, 513 U.S. 1183 (1995).  In examining specific jurisdiction, the "minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'"  Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  The minimum contacts requirement is satisfied if "the contacts expressly resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff."  Ibid. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)).  "In determining whether the defendant's contacts are purposeful, a court must examine the defendant's 'conduct and connection' with the forum state and determine whether the defendant should 'reasonably anticipate being haled into court [in the forum state].'"  Bayway Refin. Co. v. State Utils., Inc., 333 N.J. Super. [420, 429 (App. Div. 2000)] (alteration in original) (quoting World-Wide Volkswagen Corp., 444 U.S. at 297).

[Pullen, 461 N.J. Super. at 597-98.]

13

Transient jurisdiction, on the other hand, follows the defendant and can be maintained "wherever the [defendant] may be found." Mallory v. Norfolk S. Ry. Co., 600 U.S. 122, 129 (2023) (quoting Massie v. Watts, 10 U.S. 148, 158, 161-63 (1810)).

> Among the most firmly established principles of personal jurisdiction in American tradition is that courts of a State have jurisdiction over nonresidents who are physically present in the State. The view developed early that each State had the power to hale before its courts any individual who could be found within its borders, and that once having acquired jurisdiction over such a person by properly serving him with process, the State could retain jurisdiction to enter judgment against him, no matter how fleeting his visit.
>
> [Burnham v. Super. Ct. of Cal., Cnty. of Marin, 495 U.S. 604, 610-611 (1990).]

We begin with the trial court's conclusion that New Jersey courts have general jurisdiction over defendants because of the extent of their contacts with the State. General jurisdiction requires defendants' contacts with New Jersey be "so 'continuous and systematic' as to render [them] essentially at home in the forum State." FDASmart, 448 N.J. Super. at 202 (quoting Daimler, 571 U.S. at 128); see also Lebel, 115 N.J. at 323. "The standard for establishing general jurisdiction 'is a difficult one to meet, requiring extensive contacts between a

defendant and a forum.'" FDASmart, 448 N.J. Super. at 202-03 (quoting Mische v. Bracey's Supermarket, 420 N.J. Super. 487, 492 (App. Div. 2011)).

A business entity's "principal place of business and place of incorporation establishes where the [business] is 'at home' and subject to general jurisdiction." Id. at 202. An individual is rendered "at home" for general jurisdiction purposes where the individual is "domicile[d]." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). The parties acknowledge Hardin is a resident of Virginia and Locke Lord is not a New Jersey LLP and does not maintain its principal place of business here.

We disagree with the trial court's conclusion that Locke Lord's maintenance of an office in New Jersey, the practice of law by its attorneys in the State, and its representation of clients with New Jersey addresses were sufficient contacts to establish general jurisdiction over the firm in our courts. The record establishes that Locke Lord's rented Newark office was not the home office of any of the partnership's attorneys and generated a small percentage of the firm's overall revenue during the relevant period. In addition, the use of New Jersey mailing addresses by Locke Lord's clients is not attributable to the firm's presence in the State.

Nor is the fact that the firm's attorney's practice law in New Jersey, standing alone, sufficient to establish general jurisdiction. The United States Supreme Court has "rejected the premise of 'approv[ing] the exercise of general jurisdiction in every [s]tate in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" Baskin, 462 N.J. Super. at 616-17 (quoting Daimler, 571 U.S. at 138). A business that "operates in many places can scarcely be deemed at home in all of them." Daimler, 571 U.S. at 139 n.20. "[A]s International Shoe itself teaches, a corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" Dutch Run-Mays Draft, LLC v. Wolf Block, LLP, 450 N.J. Super. 590, 599 (App. Div. 2017) (quoting Daimler, 571 U.S. at 132).

The record does not support the trial court's conclusion that Locke Lord had the type of extensive contacts necessary to render it essentially at home in New Jersey. See e.g., BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 414 (2017) (no general jurisdiction in Montana over railroad company that owned more than 2,000 miles of track and had more than 2,000 employees in Montana); Baskin, 462 N.J. Super. at 615-17 (no general jurisdiction over defendants that conducted over twenty-five percent of their business in New Jersey and

generated nearly twenty-five percent of their revenue from New Jersey sales). Locke Lord's business activities in New Jersey were limited to the maintenance of a rented office where its attorneys from other offices could meet with clients. While Locke Lord was conducting business and practicing law in New Jersey, the extent of its activities in the State was not substantial, continuous, or systematic to vest our courts with general jurisdiction to hear Dakota's claims against the firm.

We are not persuaded by Dakota's argument that the Due Process Clause requires a less vigorous test for determining whether a professional partnership is subject to general jurisdiction in a forum state than is applicable to corporations. Dakota cites no controlling precedent interpreting the Due Process Clause less rigorously for partnerships than for other business entities. In addition, in Dutch Run-Mays Draft, LLC we held that "[t]he Fourteenth Amendment due process constraint described in Daimler . . . applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or the business enterprise sued." 450 N.J. Super. at 602-03 (quoting BNSF, 581 U.S. at 403).

Nor does the record support the trial court's conclusion that Hardin is subject to the general jurisdiction of New Jersey courts. As noted above, Hardin

17

is a resident of Virginia. He has never worked or lived in New Jersey or visited the State on work-related matters. Hardin's communications with Collins while Collins happened to be in New Jersey and Hardin's directing invoices to a New Jersey address are insufficient to establish general jurisdiction.[2] The court also found Hardin's mailing of a brochure soliciting business to Collins and Schneider in 2017, after Dakota lost the escrow payment, to be a meaningful contact with the State. These facts fall short of the type of consistent contacts with New Jersey required to "approximate physical presence in the State" and establish general jurisdiction. Wilson v. Paradise Vill. Beach Resort and Spa, 395 N.J. Super. 520, 528 (App. Div. 2007).

Specific jurisdiction is available only when the "cause of action arises directly out of a defendant's contacts with the forum state . . . ." Waste Mgmt., Inc., 138 N.J. at 119. "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" Bristol-Myers Squibb Co. v. Super. Ct. of Cal., Cnty. of San

---

[2] The trial court also relied on Hardin's communications with Steven Schneider, the Chief Executive Officer of Starboard. Schneider, however, is a resident of Virginia and there is no evidence in the record he was in New Jersey while communicating with Hardin.

Francisco, 582 U.S. 255, 264 (2017) (quoting Goodyear, 564 U.S. at 919 (internal quotation marks and brackets in original omitted)).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  Ibid.

A "fact-sensitive analysis is particularly necessary when a party attempts to assert jurisdiction over a non-resident attorney based upon allegedly deficient legal services rendered to that party in another forum."  Reliance Nat. Ins. Co. in Liquidation v. Dana Transport, Inc., 376 N.J. Super. 537, 545 (App. Div. 2005) (reversing interlocutory order denying motion to dismiss and remanding for order of dismissal because specific jurisdiction was lacking over non-resident law firm in malpractice action brought by plaintiff with New Jersey principal place of business).

We disagree with the trial court's conclusion defendants are subject to specific jurisdiction in our courts with respect to Dakota's malpractice claim. Neither Hardin nor any other Locke Lord attorney involved in representing Dakota traveled to New Jersey in connection with the representation, was licensed to practice law in New Jersey, or did any work on the matter implicating New Jersey law.  Thus, the alleged basis of Dakota's claim has no nexus to any

of defendants' limited contacts with New Jersey, much less the direct relationship required to establish specific jurisdiction.

Collins' physical location in New Jersey when he communicated with Hardin and defendants' direction of billing invoices to the State are insufficient to establish specific jurisdiction. See Baanyan Software Servs., Inc., 433 N.J. Super. at 477-78 ("[T]elephonic and electronic communications with individuals and entities located in New Jersey alone, are insufficient minimum contacts to establish personal jurisdiction over a defendant," and "the fact that defendant received payment from [plaintiff in New Jersey], and submitted timesheets to [plaintiff in New Jersey], does not support a finding of personal jurisdiction . . . ."). In addition, pertinent contacts for purposes of establishing specific jurisdiction must "result from the defendant's purposeful conduct and not [as here] the unilateral actions of the plaintiff." Bayway Refin. Co., 333 N.J. Super. at 429-32 (that defendant mailed payments to plaintiff's New Jersey office as instructed did not "support the proposition that [defendant] availed itself of the 'benefits' or 'protections' of New Jersey law, or militate in favor of New Jersey's jurisdiction").

Finally, the trial court's conclusion that Dakota obtained transient jurisdiction over defendants is contradicted by our holding in Citibank. There,

20

a defendant filed a third-party complaint against, among other entities, a New York law firm, alleging malpractice in connection with its representation of a purchaser of an interest in a New York real estate venture. 290 N.J. Super. at 525. The law firm, a partnership, did not do business or have an ascertainable presence in New Jersey. Id. at 526. The defendant served the law firm partnership by personal service on one of the firm's partners at his residence in New Jersey. Ibid. The partner served had nothing to do with the legal representation giving rise to the malpractice claim. Ibid.

In response to the law firm's motion to dismiss for lack of personal jurisdiction, the defendant argued he obtained transient jurisdiction over the firm by service on the firm's partner while that partner was present in New Jersey. Id. at 528. The trial court agreed with defendant. Ibid.

We reversed. Ibid. As we explained,

> [w]e consider first the jurisdictional significance of personal service in this State of one of the law firm's partners. Defendant relies on R. 4:4-4(a)(5), which provides that service of original process shall be made upon a partnership by personal service upon a general partner pursuant to R. 4:4-4(a)(1). Having made such service upon a general partner in New Jersey, the [defendant] contends that it ipso facto acquired in personam jurisdiction over the New York partnership. Not so.
>
> [Ibid.]

We explained that <u>Rule</u> 4:4-4 does not define jurisdictional limits, but is a mechanical rule that prescribes the method of acquiring jurisdiction when the constitutional limits of due process permit jurisdiction to be obtained. <u>Ibid.</u> <u>Rule</u> 4:4-4(a)

> addresses the manner of personal service on individuals and entities who have a territorial presence in this State, that is, those who are subject to the State's exercise of <u>in personam</u> jurisdiction on the fundamental predicate of their being here. That predicate alone satisfies due process requirements, and no further inquiry need be undertaken.
>
> [<u>Id.</u> at 529.]

<u>Rule</u> 4:4-4(b)

> addresses the mechanics by which <u>in personam</u> jurisdiction may be obtained by constructive or substituted service over those individuals and entities who are not present in the [S]tate but who, as a matter of due process of law, are subject to the exercise of its long-arm jurisdiction. The rule prescribes how they shall be served. Constitutional principles determine whether that service is effective for obtaining jurisdiction.
>
> [<u>Ibid.</u>]

With respect to obtaining transient jurisdiction over a foreign partnership we focused "on the nature of a partnership as a juridical entity having an existence separate from that of the partners." <u>Ibid.</u> We held,

22

[p]lainly, a foreign corporation or unincorporated association would not be subject to this State's in personam jurisdiction merely because a person authorized to receive service on its behalf happened to be present in this State and was personally served here. We are convinced that the same is true in respect of a foreign partnership.

[Id. at 529-30.]

We added a caveat:

Here, the partner who was served in New Jersey . . . himself had no contact with the transaction that is the subject of the third-party complaint. The matter might well be different if the partner who resided in and was personally served in New Jersey had been [the] third-party defendant [involved in the transaction]. That is to say, the conduct of each partner binds the partnership. Thus, if the partner whose conduct is the basis of the claim against the partnership were subject to personal service in this State, then service upon that partner would effect jurisdiction over the partnership.

[Id. at 530-31.]

"We consequently [held] that in personam jurisdiction over [a] third-party defendant law firm was not obtained by personal service in New Jersey on a partner having no connection with the subject representation." Id. at 531.[3]

---

[3] We note that the two Locke Lord partners who were served with the FAC in New Jersey are not "general partners" of Locke Lord because Locke Lord is an LLP and has no general partners. We need not decide the significance of their partnership status, given the absence of their involvement in the representation of Dakota.

We also conclude, for the same reasons, that the record does not support the trial court's finding of transient jurisdiction with respect to Hardin. Notably, Hardin ceased being a partner at Locke Lord and became "Of Counsel" with the partnership in January 2016, prior to his representation of Dakota. Thus, even if transient jurisdiction had been obtained against Locke Lord, it is not clear that service on the two firm partners would establish transient jurisdiction over Hardin.

Finally, service on Locke Lord's registered agent in New Jersey does not establish general or transient jurisdiction. Dutch Run-Mays Draft, LLC, 450 N.J. Super. at 605-06; see also Display Works, LLC v. Bartley, 182 F. Supp. 3d 166, 173-79 (D.N.J. 2016) (rejecting argument that defendant "consented to jurisdiction in New Jersey because it registered to do business in the [S]tate, it designated an agent for service of process whom [plaintiff] served in the [S]tate, and it engages in business" in New Jersey).

In light of our conclusion that the lack of personal jurisdiction requires dismissal of the FAC, we need not determine if Dakota's registering to do

business after the FAC was filed cured the bar to maintaining its claims created by N.J.S.A. 42:2C-65(a).[4]

The March 14, 2024 order is reversed and the matter is remanded for entry of an order dismissing the complaint for lack of personal jurisdiction. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[4] Defendants also argue Dakota is judicially estopped from arguing New Jersey has jurisdiction to hear its malpractice claim because Dakota argued in the Pennsylvania Court of Common Pleas that "every action relevant to this dispute took place in Pennsylvania." Because we resolve this appeal on jurisdictional grounds, we need not address defendants' judicial estoppel argument.

A-2519-23